CAROLUS *v.* ARKANSAS LIGHT & POWER COMPANY.

Opinion delivered June 2, 1924.

1. CONTRACT—ACTION FOR BREACH—PARTIES.—Where a contract between a landowner and a power company contemplated that the latter would install motors and furnish power for the operation of a pumping plant on a rice farm, but nothing to show that it was made for the benefit of the former's tenant, such tenant was not a beneficiary of the contract, nor a proper party to an action for its breach.

2. EVIDENCE—CONTEMPORANEOUS PAROL AGREEMENT.—Where a power company contracted with the owner of a rice field for power to be used in pumping water and provided that it superseded all previous contracts, it was not error, in an action on the contract, to exclude testimony of the landowner as to a contemporaneous verbal contract under which he was operating.

3. APPEAL AND ERROR—THEORY AND GROUNDS OF DECISION OF LOWER COURT.—The Supreme Court will not reverse a correct ruling of the trial court, although an erroneous reason was given for such ruling.

Appeal from Arkansas Circuit Court, Northern District; *George W. Clark,* Judge; affirmed.

*Geo. C. Lewis,* for appellants.

1.   These are the established and salient facts:   The owner leased the rice farm to a share-cropper, under an arrangement whereby they were to become equal owners, or tenants in common, of the crop.   The owner arranged for electric power with a public service corporation, and, knowing that the tenant was unskilled in the operation of electrical machinery, arranged also that the company should exercise general supervisory control and direction over the machinery and keep it in operation.  The tenant, in reliance on this arrangement, undertook to make the crop and to carry out his part of the contract, and the company undertook to install and keep in operation the machinery, and to give the agreed supervisory service. We think the court erred in dismissing the tenant from the case *in limine,* and that the correct rule is stated in Ruling Case Law, p. 884.   See also 144 Ark. 8; 46 Ark. 132; 65 Ark. 27; 93 Ark. 346; 121 Ark. 414.

2. In this case the agreement was made solely for the purpose of enabling the appellants to make a rice crop. The company undertook to carry out its contract with knowledge that failure upon its part must inevitably entail loss to the rice crop. This case does not differ in principle from the case of *Harrington* v. *Blohm*, 136 Ark. 231.

*John L. Ingram,* for appellee.

1. The tenant, Burger, was not a party to the contract sued. While it is true that, where a promise is made to one party for a sufficient consideration for the benefit of another, the beneficiary may sue, that is true only where the contract was made for the third party's benefit as the direct and primary object, or the promisor has received money or property in the nature of a trust, under which the duty devolves upon him to perform the promise. Benjamin on Contracts, 66, and cases cited; 98 U. S. 124, 77 No. 307; 117 Pa. 606. Aside from this, Burger, in his lease contract with Carolus, agrees " * * * to look after electric motor and see that it is properly operated * * * to look after the motor and improvements and take good care of same, except usual wear and tear of such improvements." He was therefore joined in a suit for damages against appellee for failure to perform duties which he himself was to perform. His duties were fixed by that contract, which was made on April 19, 1921, whereas the contract between Carolus and appellee was not entered into until in June following. The lower court was right in holding that the damages sued for were remote and speculative. 128 Ark. 167. But whether remote and speculative or not, is immaterial. It was necessary to prove actual damages, and appellants neither proved nor offered to prove such damages. C. & M. Digest, § 1231.

WOOD, J. Dr. Carolus, a citizen of Illinois, owned a rice farm in Arkansas County, Arkansas. On the 19th day of April, 1921, he entered into a contract with one J. W. Burger by which he leased the farm to Burger for

the year 1921, and agreed to furnish a complete irriga-
tion well, with all the electric appliances and power for
operating the same.  Burger was to look after the elec-
trical motor and improvements and to take good care
of the same, except as to wear and tear, and see that the
motor was properly operated, and haul lubricating oil
for the motor and pump.  He was to cultivate the land,
and the crop was to be equally divided between him and
Carolus.  On June 15, 1921, the Arkansas Light & Power
Company (hereafter called company), a corporation of
Arkansas, entered into a contract with Carolus, which,
after reciting that the company had been engaged in fur-
nishing electrical energy to Carolus for pumping pur-
poses, agreed that it would continue to furnish electrical
power to Carolus' premises as from May 1, 1920, for a
period of five years, at a stated compensation, to begin
on May 1, 1921.

This action was instituted by Carolus and Burger
against the company to recover damages for injury to
their rice crop.  They set up the lease contract between
themselves, and alleged that the company had sold and
installed the motors on the rice farm of Carolus, and
that it was under contract to supply the power to operate
the same, knowing that plaintiffs could not obtain water
to irrigate the crop in any other manner; that the motors
required technical skill for their installment and subse-
quent operation, and that, as an inducement to the sale
of the motors, the company agreed to properly install the
same and to supply the technical skill and direction nec-
essary for their operation during the crop season of
1921; that the company directed that no alterations,
repairs, or changes should be made, except upon its
direction; that the company failed to properly install the
motors, and failed and neglected to give proper direction
and supervision to the operation of same, thereby causing
the pumping plant to be idle frequently; that, because
of such defective installation and operation, one of the
motors set fire to the building in which it was housed,
and both building and motor were destroyed.  Plaintiffs

alleged that, but for the interruption to the operation of the pumping plant and the shortage of water which was essential to the rice crop, the plaintiffs would have made at least 6,800 bushels of rice, worth 90 cents a bushel, which they had planted on the one hundred acres, in reliance upon the company's agreement; that, because of the company's default as mentioned, they made only 1,536 bushels of rice; that the net damage to plaintiffs, because of such default, amounted to the sum of $4,000, for which they asked judgment.

The defendant answered, denying the allegations of the complaint as to damages and as to its alleged default in performing its contract. It averred that "it had nothing whatever to do with the operation of the pumping plant and nothing to do with its installation, and was under no agreement to direct the operation of the same." The defendant also moved to strike plaintiff Burger as a party, alleging that he had no interest in the suit, and that the complaint did not state a cause of action as to him, and that he was improperly joined as party plaintiff.

The court sustained the motion, and the cause proceeded between Carolus and the company.

Carolus testified substantially as follows: That, during the year 1919, he ascertained that one of the motors on his rice farm was too light, and entered into negotiations by which the company, for the sum of $80, agreed to take the lighter motor and install one of higher power. As a part of the agreement for the exchange, the company agreed to keep up the motors and superintend their operation. During the year 1920 the company furnished current, but the service was imperfect, and, after the pumping season was over, witness complained to the company, stating that he had practically lost his rice crop on that account, and that he did not want a repetition of it the next year. The company assured him that he would be taken care of the next year, and would have no trouble. The next year witness entered into the lease contract with Burger and into the power contract with

the company above mentioned. Witness testified that the clause in the lease contract which required Burger to look after the electrical motor and see that it was properly operated and to haul lubricating oil, etc., simply meant that Burger was to start and stop the motor, oil it, etc., but, when any trouble developed, he was to notify the company, and it was to send out its own employees to remedy the difficulty, in accordance with its contract. Burger was not an electrician, and witness was not an electrician, and did not know whether the motor acquired from the company in the exchange referred to was properly installed, but such motor gave trouble until it was burned.

Burger testified, and explained the method of operation of the pumping plant and as to the defects therein. He stated that the company's manager told witness that the relift plant was so wired that the company had only one man to take care of it, and he came and started the motors. The company's manager told witness not to do anything to the motors when there was trouble, but to notify the company. Witness explained that some of the company's men, in attempting to fix the defects in the starter to the motor, had taken out a coil. This coil had never been replaced and the starter never fixed, though the employees were called many times because of stoppages. Finally, a fire developed, which burned up the motor and the building. The company replaced the motor with one of smaller size than the one destroyed by fire, and witness protested that it was not suitable. It was used, however, for the balance of the season. It threw a fifth less water than the other motor, and this, with the previous shut-downs, prevented a sufficient supply of water to mature the rice crop. Witness knew nothing about electricity, and was absolutely dependent on the company's employees when trouble occurred in the pumping plant, and the company knew that witness had no other way to get water.

The court, over the objection of Carolus, refused to allow testimony to the effect that, because of the com-

pany's failure to remedy the defects in the motor and direct the operation of same, only 1,536 bushels were matured on the 100 acres, whereas, if the machinery had operated in the usual manner and there had been no interruption on account of the fire, the witness would have made, judging from the yields in neighboring fields, 6,800 bushels of rice, which would have been sold at the current market price of 90 cents per bushel, of which Burger would have received half. The court, also over the objection of Carolus, refused to allow testimony to the effect that the representatives of the company, at numerous times between the 15th of June and the day of the fire, agreed to remedy the defect in the starter connected with the motor, and that it was in reliance upon that agreement that Carolus made no effort to have the same remedied by other persons; that Burger knew nothing about electrical appliances, and did not know what was necessary to be done to remedy the defect.

The court thereupon instructed the jury to return a verdict in favor of the company, which was done. Judgment was rendered against recovery by the plaintiffs, and for costs, from which is this appeal.

1. The first question for decision is whether or not the court erred in holding that the complaint failed to state a cause of action in favor of Burger, and that Burger was not a proper party plaintiff, and in dismissing the complaint as to him.

In *Thomas Mfg. Co.* v. *Prather,* 65 Ark. 27, we said: "This court long ago ruled, in line with the doctrine which generally obtains in this country, that, where a promise is made to one upon a sufficient consideration, for the benefit of another, the beneficiary may sue the promisor for a breach of his promise. This doctrine operates as an exception to the elementary rule of law that a stranger to a simple contract, from whom no consideration moves, cannot sue upon it. Therefore it should be applied cautiously, and restricted to cases coming clearly within its compass. 'There must be, first, an intent by the promisee to secure some benefit to the

third party; and second, some privity between the two— the promisee and the party to be benefited—and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him, personally.' '' The doctrine of this case has been since approved in *Dickerson* v. *McCoppin,* 121 Ark. 414, and *Schmidt* v. *Griffith,* 144 Ark. 8; see also *Spear Mining Co.* v. *Shinn,* 93 Ark. 346. In *Dickerson* v. *McCoppin, supra,* we quoted the following from R. C. L.: ''Under the rule that a beneficiary may enforce a contract, the contract must have been intended for the benefit of a third person. It is not sufficient that the performance of the covenant may benefit a third person. It must have been entered into for his benefit, or at least such benefit must be the direct result of performance, and so within the contemplation of the parties. The fact that one not a party or privy to a contract is incidentally benefited under it is no reason for declaring that the contract was made and intended for his benefit.''

Where, from the language of the contract itself or the testimony *aliunde,* it could be said that it was the intention of the parties to the contract to confer a direct benefit upon a third person, then such person may sue on the contract. It is not necessary that the person be named in the contract, if he is otherwise sufficiently described or designated; he may be one of a class of persons, if the class is sufficiently described or designated. Applying the above doctrine to the facts of this record, we do not discover that the parties to the contract had in mind any benefit to accrue directly to Burger in the performance of the contract. True, as an incident to the performance of the contract he would be benefited. The allegations of the complaint show that appellee was under contract to supply electric power to Carolus for operating his pumping plant for the season of 1921; that appellee had sold and installed motors knowing that Carolus could obtain water to irrigate his rice crop in no other way, and that, as an inducement to

the sale of these motors and to the contract for supplying electric power to Carolus, the appellee had agreed to properly install the motors and to supply the requisite technical skill and direction for their operation during the season. There is no language.in the complaint or in the alleged oral or written contract indicating that the parties to it contemplated that it was made directly for the benefit of Burger, or any other tenant of Carolus, and Burger was not specifically named, nor were any tenants named as a class. There is nothing in the allegations of the complaint, the written contract, or in the testimony *aliunde,* to show that Carolus was to lease his rice farm or that same was to be cultivated by sharecroppers. The record shows nothing more nor less than a simple contract on the part of the appellee to install motors for Carolus and supervise and direct their operation and any alterations or repairs necessary to keep them in operation, and to furnish power for the operation of the pumping plant on Carolus' rice farm, without any intimation or suggestion that the purpose of the oral or written contract was to benefit any third person. We conclude therefore .that Burger was not a beneficiary of the contract between the appellee and Carolus, and does not come clearly within the compass of the doctrine of our cases, *supra,* and hence the court did not err in holding that he was not a proper party.to the action.

2. It will be observed, from the allegations of the complaint, that the appellants bottom-their action upon an alleged breach of an oral contract on the part of the appellee to properly install electric motors for Carolus, and to direct and supervise any changes or alterations, and to direct their operation, and to keep the same in working order during the season of 1921. The only testimony tending to sustain this allegation is that of Carolus, to the effect that, after the pumping season for the year 1920 was over, witness went to appellee's office in Stuttgart and complained that there had been a good deal of trouble with the motor; that something was wrong with the starter to the motor, and that the fuses would

frequently burn out. He had practically lost a crop of rice on that account, and did not want a repetition of it the next year. He was assured that he would be taken care of the next year, and would have no trouble. When witness bought the place the appellee had a contract with Webb·to supply electric power for pumping purposes which had two or three more years to run. Witness supposed that this contract went with the land, and that he was operating under that contract for the year 1921, but, in the meantime, Webb had bought another rice farm, and claimed this contract. Appellee thereupon insisted that witness make another contract for power with it, and, under the pressure of his need for water to save his crop, such contract was made. This is the power contract before referred to. The power contract to which witness referred contained this clause: ''This contract and the terms hereof supersede any and all contracts previously entered into by and between the parties hereto,'' etc.

The appellants made the following offer of proof: ''We offer to prove by this witness that, when he made answer that he was operating under the Webb contract at all times until the contract of June 15, 1921, was signed, he simply meant that he was operating under that contract so far as rates and matters of that kind were concerned; that the arrangements for the exchange of motors and the agreement by the defendant to install and furnish supplies for and look after the operation of the motor was a separate verbal contract, but changed in the Webb contract.'' The court ruled correctly in not permitting the above proof to be made, for it would have been in direct contradiction of the above clause of the written contract of June 15, 1921, which, by its express terms, ''superseded *any and all contracts* previously entered into between the parties.'' The appellant therefore failed to sustain the allegations of the complaint as to the oral contract upon which they predicate their cause of action.

The testimony of Carolus to the effect that the appellee promised to take care of him for the year 1921 was not sufficient to show proof of the verbal contract set up in the complaint, nor was the offered testimony of Burger, to the effect that the representatives of the appellee, at numerous times between the 15th of June and the day of the fire, agreed to remedy the defect in the starter connected with the motor, and that it was in reliance upon this agreement that the appellants made no effort to have the same remedied by other persons. This testimony did not show any consideration for the alleged oral contract, and was otherwise too indefinite to establish such a contract. Appellants do not seek to recover damages for a breach of the written contract to furnish power. If the proximate cause of the loss of appellants was the failure to properly install electric motors and to keep same in good repair and operation, and if appellee was under no contractual obligation to do this, then the appellee was not liable to the appellants in damages for the loss they sustained. Therefore, before the appellants could recover under the allegations of their complaint, it was necessary for them to prove the verbal contract and its breach, as set up in the pleadings. This they have not done. Learned counsel for the appellants say that the trial court conceded the right of the appellants to recover for the building and machinery, had such recovery been asked, but say that the court was of the opinion that damage to the rice crop was remote and speculative, and not within the contemplation of the parties. The record does not disclose what reasons the court had in mind for directing a verdict in favor of the appellee. But, whatever may have been the reasons for such direction, the ruling was correct. This court will not reverse a correct ruling of the trial court, although an erroneous reason may be given for such ruling.

The judgment is affirmed.