WEST *v.* NORCROSS.

4-3821

Opinion delivered March 25, 1935.

*C. T. Carpenter*, for appellants.

*J. G. Waskom*, for appellee.

BUTLER, J. The appellants are tenants or sharecroppers on the farm of appellee and have instituted this action to enjoin the latter from evicting them from this farm. To their complaint a demurrer was interposed, which was sustained by the court. The appellants declined to plead further and elected to stand on their complaint, which was accordingly dismissed by the court.

The only question presented by the appeal is: Do appellants, under the facts stated in their complaint, establish the right to the injunctive relief prayed, and does the chancery court of Poinsett County have jurisdiction to grant the same?.

The substance of the complaint is that, under the authority of the Agricultural Adjustment Act of May 12, 1933, (7 USCA, § 601, *et seq.*), the Secretary of Agriculture entered into an agreement with appellee which is

called "The 1934-1935 Cotton Acreage Reduction Contract." The purpose of this agreement was to reduce the acreage planted to cotton for those years in an amount agreed upon with the expectation that by this method the yield of cotton would be decreased and its market value made greater. It was recognized that by far the greater percentage of cotton farms was planted to cotton only, and the reduction in acreage would necessarily result in a disturbance of the conditions surrounding the tenants and farm laborers and entail a readjustment which would affect their economic interests. As an incident to the acreage reduction, there was incorporated in the agreement § 7, which is the basis of appellants' action. It is appellants' theory that it was the intention of the contracting parties to secure them in the possession and occupancy of the houses on the appellee's farm with the acreage cultivated by them during the year 1934 and through the year 1935 without regard to the reduction in acreage effected by the reduction contract. In support of this contention appellants rely on § 7 of part 2 of the contract, and particularly on the clause: "The producer * * * shall permit all tenants to continue in the occupancy of their houses on this farm, rent free, for the years 1934 and 1935, respectively." Section 7 of part 2 is as follows:

"The producer shall endeavor in good faith to bring about the reduction of acreage contemplated in this contract in such a manner as to cause the least possible amount of labor, economic and social disturbance, and to this end, in so far as possible, he shall effect the acreage reduction as nearly ratably as practicable among tenants on this farm; shall, in so far as possible, maintain on this farm the normal number of tenants and other employees; shall permit all tenants to continue in the occupancy of their houses on this farm, rent free, for the years 1934 and 1935, respectively (unless any such tenant shall so conduct himself as to become a nuisance or a menace to the welfare of the producer); during such years shall afford such tenants or employees, without cost, access for fuel to such woods land belonging to this farm as he may designate; shall permit such tenants the

use of an adequate portion of the rented acres to grow food and feed crops for home consumption and for pasturage for domestically used livestock; and for such use of the rented acres shall permit the reasonable use of work animals and equipment in exchange for labor.''

Section 10 (h) of the Agricultural Adjustment Act provides that the Secretary of Agriculture shall report any violation of the agreement entered into under part 2 to the Attorney General of the United States, ''who shall cause appropriate proceedings to enforce such agreement to be commenced and prosecuted in the proper courts of the United States without delay.''

■ The contention is made that § 7, *supra,* of the agreement was written by the contracting parties to avoid the eviction of tenants and the laying off of employees, and to avoid increasing unemployment with consequent aggravation of economic emergencies; that therefore § 10 (h), *supra,* does not limit to the Secretary of Agriculture the right to bring suit to enforce the provisions of contracts made pursuant to § 8 (1) of the adjustment act, but that appellants, as parties intended to be benefited, may sue in their own names for specific enforcement of the contract. This contention, in so far as we are advised, has not been passed upon by any court of last resort in construing the Agricultural Adjustment Act. Appellants have cited a number of authorities construing other acts which they contend are authority for the position they take. We have examined these cases. Among them are: *Charleston Dry Dock Co.* v. *O'Rourke,* 274 Fed. 811, 813; *Bigelow* v. *Calumet & Heckla Mining Co.,* 155 Fed. 869, 876; *Texas & N. O. Ry. Co.* v. *Ry. Clerks,* 281 U. S. 548, 50 S. Ct. 427; *Stephens* v. *Ohio State Tel. Co.,* 247 Fed. 759; *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1, 19 S. Ct. 77. These cases have but little application to the point in question, although there are expressions contained in some of them which appear to support appellants' view.

The right to maintain suits by individuals for violation of the National Industrial Recovery Act has been denied. Section 703 (c) of that act provides: ''The several district courts of the United States are hereby in-

vested with jurisdiction to prevent and restrain violations of any code of fair competition approved under this chapter; and it shall be the duty of the several district attorneys of the United States, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations." It has been held that the section quoted prescribed the exclusive remedy, although there are no words of express exclusion of the right of individuals to act in the enforcement of the statute, or of courts generally to entertain complaints on that subject. The exclusion results by implication because of the doctrine to the effect that, where a statute creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes. *Purvis* v. *Bazemore*, 5 Fed. Supp. 230; *Stanley* v. *Peabody Coal Co.*, 5 Fed. Supp. 612. In the last-named case, in support of the rule announced, the court cites *Wilder Mfg. Co.* v. *Corn Products Co.*, 236 U. S. 165, 35 S. Ct. 398; *Minnesota* v. *Northern Security Co.*, 194 U. S. 48, 24 S. Ct. 598, and *General Investment Co.* v. *L. S. & M. S. R. Co.*, 260 U. S. 261, 43 S. Ct. 106.

2. Assuming, without deciding, that the remedy provided by § 10 (h), *supra*, is not exclusive, we proceed to an examination of the contention that appellants are third party beneficiaries and may sue to enjoin a violation of their rights under the contract. Numerous cases are cited by appellants to support this contention, many of which are not available to us. These appear to be decisions of inferior courts in New York City and other large cities upholding the right of employees to sue and recover wages for overtime work beyond the maximum hours prescribed by an agreement adopted pursuant to the National Industrial Recovery Act. *Fryns* v. *Fair Lawn Fur Dressing Co.*, 114 N. J. Eq. 462, 168 Atl. 862, is cited as a leading case. The complainants in that case were thirty-six in number, members of the Needle Trade Workers' Industrial Union. Suit was brought by them against their employer for the violation of an agreement made pursuant to the National Industry Recovery Act. In

considering the question as to whether or not the cause of action belonged to the complainants, the court noticed that, if the relief is to be obtained, it must go on the theory of contract to which they were not parties, but in which they were in fact the real parties in interest. In passing on this question, the court said: "The difficulties which presented themselves in the case of suits by third persons upon contracts made by others were two—the want of privity, and the want of consideration moving from the third person. These difficulties have been overcome in this State, as to contracts not under seal, by decisions of the courts, * * * and, as to contracts under seal, by the statute. The only effect of the decisions and the statute is that privity of contract is not requisite in order to maintain the action, and the consideration need not move from the person for whom the contract is made. Neither the cases above cited, nor the statute, go so far as to permit a suit upon the contract to be maintained by persons with whom the defendant never meant to enter into contractual relations. It is not enough that the plaintiff may be benefited by the performance of the contract. He can only maintain the action when the contract is made for him. It would be a decided novelty to hold that any one contracting with a municipal corporation is liable to an action of contract, not only by the corporation, but by every citizen of the municipality. *Styles* v. *F. R. Long Co.*, 70 N. J. Law, 301, 57 Atl. 448, 449.

"Are complainants within the rule? The first half of the re-employment contract deals with hours of work and wages. The only parties directly affected by these stipulations are the employer himself and the employees. It seems clear to me that employees are a primary party in interest to the contract; the promise, in substance, was to them. Complainants can sue thereon."

It will be observed that under the laws of New Jersey privity of contract is not requisite in order for third persons benefited by it to maintain an action. This, however, is not the rule in this State, nor can it be said that there is any intention on the part of the promisee to secure benefits to the third party unless the promisee

rests under some obligation to the third party to be benefited. In other words, there must exist, in order to give third parties the right to maintain an action under a contract, some privity between them and the promisee. Cases may arise, which are the result of some unexpected and overwhelming catastrophe, where governments may be said to be obligated to its citizens to provide them shelter and food; but this is not one of the ordinary functions of government; and, while the economic situation at the time of the entering into the contract in the instant case was acute, it can hardly be contended that the situation was such as to place the government under any obligation to producer or farm tenants. Therefore there was no privity of contract between the government and the appellants. The general rule under which third person may sue on a contract is that there must first be an intention by the promisee to secure some benefit to the third party and some privity between the two—the promisee and the party to be benefited—and some obligation or duty owing from the former which would give such third party a legal or equitable claim to the benefit of the promise. *Thomas Mfg. Co.* v. *Prather*, 65 Ark. 27, 44 S. W. 218; *Dickerson* v. *McCoppin*, 121 Ark. 414, 181 S. W. 151; *Carolus* v. *Ark. Light & Power Co.*, 164 Ark. 513, 262 S. W. 330.

Under the provisions of § 7 of the reduction contract, *supra,* no obligation is placed upon the tenants to remain upon the farm, and, if they remain, to cultivate the acreage appurtenant to the houses occupied by them; they are left free to stay or go as they choose, so no consideration moves from them. In the case of *Georgia State Savings Ass'n* v. *Dearing,* 128 Ark. 149, 193 S. W. 512, the court said (quoting page 154): ''The rule in this State is that a stranger to a contract between others, in which one of the parties promises to do something for the benefit of such stranger, there being nothing but the promise (no consideration from the stranger, and no duty or obligation to him on the part of the promisee), cannot recover thereon.'' By these rules no cause of action exists under the Agricultural Adjustment Act and the Cotton Acreage Reduction Contract in favor of the

appellants, and the trial court properly sustained the demurrer to the complaint.

In reaching this conclusion, we have not overlooked the cases from this court cited by appellants in which third parties were allowed to bring suit under a contract of which they were the beneficiaries. All these cases, however, came within the rule announced in *Thomas Mfg. Co.* v. *Prather, supra.* Those cases cited by appellants in which the citizens of municipalities were held to be entitled to maintain suits to enforce their rights under contract entered into between the municipality and the utility have no application to the case at bar, for there the municipality was merely the agent of the citizens receiving no benefit except the incidental one resulting from the direct benefit to the citizen which benefit was the primary and paramount purpose for the city's entering into such contract.

It would seem that the construction placed on § 7, *supra,* by the appellants is not shared by the Department of Agriculture, but, in view of the conclusion we have reached, it is unnecessary to indicate which interpretation we think is correct.

Affirmed.