## COMMODITY CREDIT CORPORATION v. HENWOOD.

No. 12011.

Circuit Court of Appeals, Eighth Circuit.

Feb. 24, 1942.

Rehearing Denied March 14, 1942.

Charles M. Spence, of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young and Robert H. Charles, all of St. Louis, Mo., on the brief), for appellant.

Clark M. Clifford, of St. Louis, Mo. (A. H. Kiskaddon, B. F. Batts, and Lashly, Lashly, Miller & Clifford, all of St. Louis, Mo., on the brief), for appellee.

Before STONE and JOHNSEN, Circuit Judges, and OTIS, District Judge.

STONE, Circuit Judge.

This is an appeal from a judgment for $14,770.37 recovered for undercharges on shipments of cotton over the lines of the railway. The judgment amount is made up of two principal sums ($9,859.49 and $1,743.71) with interest thereon. Only the first of the above sums is involved in this appeal.

Appellant was neither consignor nor consignee of the shipments involved. The liability is based upon the claimed rights of the railway, as a third person, under contracts between appellant and the several owners of the cotton.

The essential facts are undisputed and are as follows. Appellant is an incorporated agency of the Government organized to make loans on agricultural commodities to the producers thereof. In performance of its functions, it made separate loans to certain cotton producers (in Missouri and Arkansas) on notes secured by warehouse receipts representing cotton raised by them and then stored in warehouses at Caruthersville, Missouri. Attached to each of the several notes was a "Loan Agreement" setting forth the various rights and obligations of the parties thereto. Pertinent portions of this Agreement are as follows. In paragraph "2" is a heading "List of Lienholders and Their Waiver and Consent Pledge", being designed to cover waiver or release of all liens and encumbrances prior to the loan. Paragraph "6" was (italics added) as follows: "The undersigned agrees that if any Federal agency or instrumentality shall become the holder of the above-mentioned note, it may, before or after maturity, move the collateral cotton from one storage point to another *and pay freight;* may compress the commodity; may store separately, in block, or otherwise; may insure or reinsure against any risks, or otherwise handle or deal with the commodity, as may be deemed appropriate and proper, subject to the terms of

this loan agreement, releasing, substituting, and obtaining any and all instruments and documents, *and paying or discharging any accrued or accruing charges or expenses as may in any way be appropriate or necessary therefor.* Any costs and expenses connected with such handling without regard to insurance savings by reclassification or duration shall be a charge against the commodity, payable out of any proceeds thereof."

These shipments moved to Caruthersville, Missouri, for "concentration" or/and "storage" under "in transit" rates which provided that where cotton was destined to a way point for compression, concentration or storage it should carry a "floating in" rate, materially less than the local rate, but that if further movement was not over the same carrier the local rate should apply and the difference be collectible. In these movements to Caruthersville, the consignor and consignee were the same, being the farmer or the ginner.

On arrival at Caruthersville, the cotton was placed in warehouses and warehouse certificates issued therefor. Thereafter, appellant made the loans and Loan Agreements and the warehouse certificates were delivered to it as collateral.

Still later and acting under the rights given in paragraph "6" of the Loan Agreement, appellant decided to ship this cotton to New Orleans for warehousing there. This shipment was to be by river barges. With information that such shipment might involve application to the cotton of the above railway local rates instead of the lower "floating in" rates to Caruthersville, appellant made the shipment by barges. Under the tariff, this barge movement made the local rates applicable. This action is to collect direct from appellant the excess of the local over the "floating in" rates.

Two successive questions must be answered to determine the existence vel non of liability of appellant under this contract to pay appellee these undercharges. Since appellee is a stranger to the contract, the first question is whether appellant, in this contract, obligated itself to the borrower to pay the kind of liability represented by these excess charges. If such obligation exists, the second inquiry is whether appellee can take advantage thereof by direct enforcement.

■ It seems to us that the contract imposes on appellant an obligation to the borrower to pay this kind of liabilities. By "this kind of liabilities" is meant liabilities arising out of or caused by the handling of the cotton by appellant. At the time the loans were made and the warehouse certificates taken, the liability of the shippers for these undercharges was only potential and entirely dependent upon what might thereafter be done. The sole cause for that potentiality ripening into a definite fixed actuality was the unrestricted act of appellant in shipping the cotton by barges. It had a clear right, under the contract, to so ship but no obligation so to do. This right arose from paragraph 6 of the contract. To this right was coupled the broad obligation to pay or discharge any "charges or expenses as may in any way be appropriate or necessary therefor"—*meaning resulting from the exercise of its contract rights over the cotton.* These undercharges so resulted.

■ It seems to us this obligation is such as can be directly enforced by appellee. Determination of this matter rests in the applicable rule of law as to when one can enforce the provisions of a contract to which he is a stranger. The applicable rule is to be determined by the law of the State wherein the contract was made or is to be performed.

■ So far as direct evidence, this record is silent as to the place of execution or of performance of any of these Loan Agreements. From the circumstance that these Agreements are executed only by the farmer—borrower—we may be justified in assuming that the State of residence was where the several contracts were executed. If we can act upon this assumption, plaintiff's exhibit A contains the necessary evidence as to residence. That exhibit shows various shipments from Greenway, Arkansas (433 bales), and Piggott, Arkansas (8 bales), and the remainder from Missouri points.

■ Appellant contends that the rule in Arkansas governing right of a contract stranger to enforce the contract differs from the rule in Missouri in that both rules require that it must be the intention of the contracting parties to benefit him but the Arkansas rule has the further requirement that there must be "privity" between the promisee, under the contract, and the stranger. Arkansas decisions define this "privity" as being the existence of an obligation from the promisee to the stranger. Schmidt v. Griffith, 144 Ark. 8, 221 S.W. 476; West v. Norcross, 190 Ark. 667, 80

S.W.2d 67, 69; and see Morgan v. Slayden, 191 Ark. 622, 87 S.W.2d 61, 62; and Robertson v. Davis, 193 Ark. 173, 98 S.W.2d 72. Such an obligation existed here, hence we may pass to consideration of whether the parties to the contract intended appellee to be benefited by the provisions of paragraph 6 of the contract as required both by the Arkansas law (West v. Norcross, 190 Ark. 667, 80 S.W.2d 67, 69; Carolus v. Arkansas L. & P. Co., 164 Ark. 507, 262 S.W. 330, 331, 332) and by the Missouri law. Ellis v. Harrison, 104 Mo. 270, 16 S.W. 198, 199; Porter v. Woods, 138 Mo. 539, 39 S.W. 794, 798; Howsmon v. Trenton Water Co., 119 Mo. 304, 24 S. W. 784, 785. We think they did by the very terms of that paragraph when construed in the light of the entire contract.

■ Appellant concedes that such beneficiary need not be named and need not even know the terms of the contract when executed. Carolus v. Arkansas L. & P. Co., 164 Ark. 507, 262 S.W. 330, 332. It is sufficient if he comes fairly within the class or kind covered by the contract. The class involved here in this contract are those to whom obligations of payment are caused by the acts of appellant in handling the pledged cotton under the powers and obligations in paragraph 6 of the contract. Definite obligation for these undercharges arose because of such handling by appellant. Hence appellee came within the class in paragraph 6.

The intention of the parties to contract that such obligations should be paid directly to the obligees and was therefore, in a legal sense, for their benefit seems clear from the contract. The contract itself evinces two purposes in respect to the financial status of this cotton. The first is that it should come to appellant clear of liens and encumbrances. The second is that all expenses in connection with the cotton caused by appellant should be paid by it; and charged against the sale proceeds in settlement with the borrower, but that no deficiency in sales price should be charged against the borrower. The borrower gave up all control over the cotton and appellant was to protect him from charges it might cause in connection therewith. This contract created situation meets the requirement that the parties thereto intended a direct benefit to such as the appellee here.

The judgment should be and is affirmed.