The **FIDELITY & CASUALTY COMPANY OF NEW YORK** and General Accident Fire & Life Assurance Corporation, Ltd., Appellants,

v.

**J. A. JONES CONSTRUCTION COMPANY, Appellee.**

**J. A. JONES CONSTRUCTION COMPANY, Appellant,**

v.

The **FIDELITY & CASUALTY COMPANY OF NEW YORK** and General Accident Fire & Life Assurance Corporation, Ltd., Appellees.

Nos. 17324, 17325.

United States Court of Appeals
Eighth Circuit.

Dec. 26, 1963.

VAN OOSTERHOUT, Circuit Judge.

This is an action for indemnity. Plaintiffs, liability insurance carriers for Erhart, Eichenbaum, Rauch & Blass, architects, paid judgments obtained in the Arkansas state court against the architects by representatives of four of the employees of J. A. Jones Construction Company (Jones) injured or killed by a cave-in of a seventeen-foot vertical basement excavation. Such excavation was made by Jones in the performance of its primary contract for the construction of a Penney store building in Little Rock, Arkansas. The architects were employed to supervise the construction of the building and to perform certain duties imposed by the Little Rock building code hereinafter discussed. Liability of the architects was predicated upon their negligence. The judgments against the architects were affirmed by the Arkansas Supreme Court. Erhart v. Hummonds, 232 Ark. 133, 334 S.W.2d 869.

Plaintiffs by payment of the judgments have been subrogated to all rights of indemnity which the architects may have against Jones. Plaintiffs stand in the shoes of the architects. If the right of the architects to indemnity is established, plaintiffs are entitled to recover. Jurisdiction, based upon diversity of citizenship, is established.

Plaintiffs contend that Jones' construction contract with the owner provides indemnity for them for the judgments paid and that in any event they are entitled to equitable indemnity upon the basis that as between the architects and Jones the injury was caused by the primary negligence of Jones.

John W. Barron, Little Rock, Ark., for appellants. Jacob Sharp, Jr., Little Rock, Ark., with him on the brief.

W. A. Eldredge, Jr., Little Rock, Ark., for appellee. Smith, Williams, Friday & Bowen, Little Rock, Ark., of counsel.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and DA-VIES, District Judge.

Judge Young, in a well-considered opinion reported at 200 F.Supp. 264, denied defendant's pretrial motion for summary judgment. Such opinion and the opinion of the Arkansas Supreme Court in Erhart set out in considerable detail the facts pertinent to the present controversy and hence we will set out only the basic facts necessary for an understanding of the issues presented by this

case as the need therefor arises in the course of this opinion.

Judge Young in his opinion just mentioned discusses in considerable detail the controlling law. He points out that under Arkansas law the policy of workmen's compensation coverage protects employers who have paid compensation from actions to enforce contribution among tort-feasors but that there is nothing in such policy which prevents the enforcement against an employer of an express contract of indemnity. See C & L Rural Elec. Co-op. Corp. v. Kincaid, 221 Ark. 450, 256 S.W.2d 337.

The trial court submitted the case to a jury upon special interrogatories. The two interrogatories here material, with the jury's answers thereto, are:

"1. Do you find from a preponderance of the evidence that the defendant or its agents, servants or employees were guilty of negligence and that such negligence, if any, was a proximate cause of the cave-in of the Penney Building excavation on or about March 4, 1957?

Yes

ANSWER (Yes or No)

"2. If your answer to Interrogatory No. 1 is 'No', then do not answer this or any further interrogatories. If your answer to Interrogatory No. 1 is 'Yes', then do you further find from a preponderance of the evidence that the architects or their agents were guilty of negligence in failing to stop the work on the Penney Building excavation prior to March 4, 1957 and that such negligence, if any, was a proximate cause of the cave-in?

Yes

ANSWER: (Yes or No)" [1]

[1] By negative answers to interrogatories 3 and 4, the jury found the architects were not negligent in the preparation of the plans and specifications and also rejected defendant's contention that Mr.

After verdict, plaintiffs filed a motion for judgment and request for finding of fact to the effect that the architects were guilty of no negligence. Such motion was overruled and final judgment was entered dismissing the complaint. This is an appeal from such judgment.

The defendant has filed a cross appeal from the court's denial of its several motions for summary judgment and directed verdict.

## I.

Plaintiffs have failed to establish the existence of an express contract of indemnity running in favor of the architects under the circumstances here presented. The rules governing the requisites and validity of contracts generally apply to indemnity contracts. The language employed must clearly and definitely show an intention to indemnify against the loss or liability involved. Anthony v. Louisiana & Arkansas Ry., 8 Cir., 316 F.2d 858, 863.

The contract between Jones and the owner is quite extensive. Many of the material portions of such contract are set out in the trial court's opinion at pp. 268–269 of 200 F.Supp. In substance, the contractor agrees to properly construct the Penney store building and assumes all risk of damage or injury to persons or property and indemnifies the owner against claims on account of such damage or injury. The contractor agrees in connection with excavation to erect such protective bracing and shoring as may be necessary to prevent cave-in of the banks. Article 38 reads in part:

"Art. 38. Architect's Status.— The architect shall have general supervision and direction of the work. He is the agent of the Owner only to the extent provided in the Contract Documents and when in special instances he is authorized by the Owner so to act, and in such instances he

Davenport, an agent of the architects, caused the cave-in by negligently driving his automobile adjacent to the excavation. Such issues are no longer in this case.

shall, upon request, show the Contractor written authority. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the Contract.

"As the architect is, in the first instance, the interpreter of the conditions of the Contract and the judge of its performance, he shall side neither with the Owner nor with the Contractor, but shall use his powers under the Contract to enforce its faithful performance by both."

No written contract was entered into between the architects and the owner. The architects were employed to supervise the construction after the building contract had been entered into and became effective.

Section 204 of the Little Rock Building Code ordinance provides:

"*Inspection and Special Engineering Supervision.*

"*Special Engineering Supervision*: Any owner or his agent engaged in the erection or causing the erection of a building or structure where the estimated value exceeds $25,000 shall employ a registered architect or a licensed engineer to supervise the construction of the building. Such architect or engineer shall be licensed under the laws of the State of Arkansas and his service shall extend over all important details of framing, erection, and assembly and he shall render full inspection service and adequate supervision on such buildings.

" * * * He * * * shall have the authority to compel the removal of defective materials or to suspend or stop work, pending the ruling of the Building Inspector."

The value of the building here exceeds $25,000.

The Supreme Court of Arkansas with respect to the architects duties in the situation here presented states:

"As indicated, the architects were paid, in addition to the fee for preparing the plans and specifications, $12,000 by the owners to see to it that the terms of the contract between the owners and the contractors were complied with. The contract provides that the general contractor 'shall erect such protection as may be required, or as directed by the architect, maintain same, and maintain any existing protections, all in accordance with the governing laws, rules, regulations and ordinances.' And, further, the 'contractor shall do all shoring necessary to maintain the banks of excavations, to prevent sloughing or caving, and to protect workmen.' The contract further provides: The architect 'shall have general supervision and direction of the work—. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the contract.' It was a question for the jury as to whether the architect was negligent in failing to stop all work until the shoring on the east wall was made safe for the workmen." 334 S.W.2d 869, 872.

The architects' status went beyond that of agent or employee of the owner. The owner had no control over the architects with respect to the safety supervision required by the Little Rock Building Code.

■ Jones by his contract doubtless indemnifies the owner against all damage claims arising out of the construction. The owner is not involved in the present controversy. We find nothing in the contract which manifests any intention upon the part of the owner and Jones to provide indemnity for the architects. Some contention is made that the architects are covered by the contract as a third party beneficiary. While such doctrine is recognized in Arkansas, it applies only where it is clearly shown that the contracting parties intended to contract for the direct benefit of the third party. Freer v. J. G. Putman Funeral Home, Inc., 195 Ark. 307, 111 S.W.2d

463; Carolus v. Arkansas Light & Power Co., 164 Ark. 507, 262 S.W. 330; see Halliburton Co. v. Norton Drilling Co., 5 Cir., 302 F.2d 431, 435.

Here it cannot fairly be said that the contracting parties intended to provide indemnity for the architects. This is particularly true with respect to injuries proximately caused by the architects own negligence.

Even in the situation of indemnity covering the contracting parties themselves, the cases require a clear expression of intent to include indemnity against the consequences of the negligence of the indemnitee. See Northern Natural Gas Co. v. Roth, 8 Cir., 323 F.2d 922; Harmon v. Robberson Steel Co., W.D.Ark., 157 F.Supp. 627, 638; Annot. 175 A.L.R. 8, 29, 34, 144; 42 C.J.S. Indemnity § 12a p. 580.

Both Jones and the architects by virtue of their contracts with the owner were required to exercise care and skill for the protection of employees and the public. The Little Rock ordinance requires the owner to employ a qualified architect or engineer to supervise the construction. It appears to us that there is as much reason for saying that the architect owed a duty to the contractor as to state the converse of that proposition.

Plaintiffs have not established that express indemnity exists which covers the architects against the consequences of their own negligence.

## II.

We now consider the equitable indemnity issue upon which plaintiffs appear to principally rely. The trial court in its opinion denying summary judgment recognized that "in the absence of an express contract the obligation to indemnify may arise from undertakings implicit in relationships assumed." In support, the court cites numerous authorities including Restatement, Restitution § 76

(Comment b.) and Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

The trial court in ruling on the motion for summary judgment rejects defendant's contention that the finding of negligence in the state court action barred indemnity upon the basis that such finding could have been based upon one of several allegations of negligence there made and that hence the determination of the indemnity issue must depend upon additional issues of fact.[2]

As shown by the jury's answer to Interrogatory 2 heretofore set out, the jury found that the architects were guilty of negligence in failing to stop the work prior to the cave-in and that such negligence was the proximate cause of the injuries. In ruling upon the plaintiffs' request for judgment in spite of the jury's findings, the court states:

"The architects, through their agents, knew of the earth conditions and natural circumstances surrounding the construction of the building, and the architects' structural engineer knew the proper methods of bracing a vertical cut for an excavation similar to this one in this locality.

"If the piling was inadequate, and it was, and the architects knew that vertically cut wall was unsafe, and they did, the jury might well find that there was an affirmative duty on the part of the architects to tell the new superintendent during the Friday conversation of the inadequacy of the piling and to remind him to make the wall safe. This was a duty owed the general public, including the contractor's employees.

"A portion of the court's instructions told the jury that if they found that on that Friday afternoon that the architects or their agents pointed out the inadequacy of the bracing to defendants' superintendent and

2. Defendant, on its cross appeal, urges that the court erred in overruling its motion for summary judgment. Because of the view we take on plaintiffs' appeal, we find it unnecessary to reach such issue.

demanded that the wall be made safe, and furthermore that the defendants' superintendent agreed to remedy the hazard as the first order of business, that in such event the jury should answer the pertinent interrogatory, which was No. 2, 'No', unless they further found that the architects were negligent in allowing the unsafe condition to continue as long as they did.

"There was a dispute in the evidence as to whether or not the employee of the architects gave such instructions on the Friday in question. It appears then that the jury may well have found that the architects' agent did not demand that the wall be made safe and that this was negligence on the part of the architects, making them liable as a joint tort feasor. I cannot say that under the evidence this was not a permissible finding by the jury.

"The jury might also have found that it was negligence on the part of the architects not to have a representative on the job the next work day, which was the morning of the accident, so that they through this representative, could have made sure that the construction was carried on in a safe manner."

The court found in effect that there was substantial evidentiary support for the jury's finding that the architects were guilty of negligence proximately causing the deaths and injuries to Jones' employees. The evidence is conflicting with respect to the steps taken by the architects in performance of the duties which they assumed. Unquestionably, the architects were aware of the inadequacy of the bracing several days before the cave-in. A fact issue exists as to whether they had the assurance from Jones' representatives that the defects would be remedied.

The effect of the jury's answer to interrogatories 1 and 2 was to find that the architects and Jones were both guilty of violation of duties which they had contracted with the owner to assume for the safety of the employees and the public and that such breach of duty upon the part of each was the proximate cause of the damages here involved.

There is considerable difference of opinion among the courts in various jurisdictions with respect to the effect of a party's own negligence upon his right to equitable indemnity. An extensive review of such conflicting authorities would be of little aid in determining what view the Arkansas court adopts when and if the problem is presented to it. Many of such authorities are fully considered and discussed in the trial court's opinion. Counsel have cited no Arkansas cases bearing directly upon the precise problem here presented. The trial court recognizes the rule generally prevailing to the effect that in absence of express contract "where the action for indemnity is among parties whose only legal relationship is that of joint feasors, indemnity as well as contribution is denied." The trial court expresses the view that Restatement, Restitution § 95 makes no radical innovation in the law of Arkansas. Said section reads:

"Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, *unless after discovery of the danger, he acquiesced in the continuation of the condition."* (Emphasis supplied.)

In our present situation, the jury's finding in Interrogatory No. 2 forecloses recovery as the architects were found to have acquiesced in the continuation of the dangerous condition after discovery thereof. We find no Arkansas cases which clearly point to what if any exceptions Arkansas courts may impose upon the general rule denying indemnity to a joint tort-feasor.

■ Substantial general authority exists to the effect that when parties have violated similar duties to the injured person, neither is entitled to indemnity. Union Stock Yards Co. v. Chicago B. & Q. R. R., 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453; Halliburton Co. v. Norton Drilling Co., supra; Ratigan v. New York Central R. R., 2 Cir., 291 F.2d 548; Chicago, R. I. & P. R. R. v. Chicago & N. W. Ry., 8 Cir., 280 F.2d 110, 114; Hagans v. Farrell Lines, Inc., 3 Cir., 237 F.2d 477, 482; Fidelity & Casualty Co. of N. Y. v. Federal Express, Inc., 6 Cir., 136 F.2d 35.

Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319, contains an excellent discussion distinguishing between primary and secondary negligence and points out that the differences are not based upon differences in degrees of negligence or any doctrine of comparative negligence. The court goes on to say:

> "But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of one primarily responsible. In the case of *concurrent* or *joint* tort-feasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other. The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injur-

ed party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury. * * * "

In Chicago, R. I. & P. R. R. v. Chicago & N. W. Ry., supra, this court stated:

> "Frequently, the courts, in considering the right to indemnity, speak in terms of 'active' vs. 'passive' negligence, or 'primary' and 'secondary' liability. * * *
>
> "However, where both, or all parties, are equally guilty of an unintentional or inadvertent wrong, i. e., negligence, so that it cannot be said that one is more guilty than the other, indemnity could not be had, for there is no 'innocent' party, who although liable, was guilty of no actual wrong. Again, the common law rule in such a situation was that no relief could be afforded to joint wrongdoers." 280 F.2d 110, 114.

■ Plaintiff has failed to establish that the trial court did not reach a permissible conclusion upon the basis of Arkansas law when it determined that the jury's finding that the architects were guilty of negligence proximately causing the damage barred recovery of indemnity from the joint tort-feasor Jones. The negligence of each of the joint tort-feasors was active and of the same character—violation of a duty assumed which was owed to the workers upon the construction site and the public. Thus, even if it be assumed that Arkansas might adopt the secondary or passive negligence exception to the general rule, still plaintiffs could not recover as they have not brought themselves within such exception.

We are not persuaded that the trial court misinterpreted or misapplied Arkansas law when it determined that the complaint should be dismissed because of the jury's finding on Interrogatory No. 2.

**612**

## III.

Plaintiffs' cause of action is based solely upon indemnity. Plaintiffs in their pleadings do not ask for contribution and in oral argument specifically disclaimed seeking any relief by way of contribution. In any event, Arkansas holds that its Workmen's Compensation Act bars an action for contribution for damages suffered by employees in situations such as this, where the employer of the injured employees is covered by workmen's compensation. C & L Rural Elec. Co-op. Corp. v. Kincaid, supra.

## IV.

Plaintiffs contend that the court erroneously admitted certain evidence. No error was committed in receiving in evidence the Little Rock Building Code ordinance heretofore set out. Said ordinance is relevant to the issues here presented. The violation of a statute or ordinance under Arkansas law is evidence of negligence. See Gill v. Whiteside-Hemby Drug Co., 197 Ark. 425, 122 S.W.2d 597.

Plaintiffs' claim that the basement excavation is severable from the contract as a whole and that the ordinance does not apply because the basement cost does not exceed the $25,000 value provision of the ordinance is without merit.

We are satisfied that the court did not abuse its discretion in permitting experts to answer hypothetical questions based upon facts in evidence calling for an opinion as to whether the architects under the facts stated should have stopped the work.

## V.

Plaintiffs urge that the court erred in its instructions to the jury with reference to Interrogatory No. 2. Plaintiffs in their brief do not set out the exception claimed to have been made to the instruction or point to the record citation as required by our Rule 11(b)3d. We have examined the record and do not find the exception here urged. Asserted errors to instructions not included in exceptions made to instructions by the trial court cannot be considered upon appeal. Rule 51, Fed.R.Civ.P.; Chicago Great Western Ry. v. Casura, 8 Cir., 234 F.2d 441, 445.

## VI.

Error is asserted in the court's failure to give plaintiffs' requested instruction reading:

"The plaintiffs request the Court to amend Interrogatory No. 2 at page 5 to the effect that instead of the last 'then do you further find from the evidence that the architects or their agents were guilty of negligence, etc.', that that be amended to read 'do you further find from the evidence that as between the plaintiffs [sic] and the architects, the architects or their agents were guilty of negligence', and we ask the Court specifically to instruct the jury that the matter of negligence should be considered solely between the defendant and the architect without regard to any alleged negligence on the part of a third party, such as injured workmen."

No authorities are cited in support of the asserted error. As heretofore pointed out, we believe the issue of whether the architects were guilty of negligence which proximately caused the cave-in and injuries was the proper issue to submit. If plaintiffs' architects are guilty of primary negligence proximately causing the damage, they are not entitled to indemnity. The instructions as a whole appear to properly and fairly submit the relevant issues to the jury. In any event, the proposed instruction does not properly state the applicable law.

A full consideration of the record satisfies us that the plaintiffs have failed to establish that the court committed any asserted error which entitles plaintiffs to a reversal. Inasmuch as the judgment dismissing the complaint must be affirmed upon plaintiffs' appeal, no necessity arises for considering defendant's cross appeal.

The judgment dismissing plaintiffs' complaint is affirmed.