914 F.2d 271
 36 Cont.Cas.Fed. (CCH) 75,976
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
GLOBAL ASSOCIATES, Appellant,
v.
The UNITED STATES, Appellee.
 No. 90-1030.
 United States Court of Appeals, Federal Circuit.
 Aug. 29, 1990.
 
 1
 Before RICH and PLAGER, Circuit Judges, and ADRIAN G. DUPLANTIER, District Judge.*
 
 DECISION
 
 2
 ADRIAN G. DUPLANTIER, District Judge.
 
 
 3
 The decision of the National Aeronautics and Space Administration Board of Contract Appeals (Board), Global Associates, NASA BCA No. 187-1, 90-1 BCA para. 22,294 (1989), granting the government's motion for summary judgment and denying Global Associates' motion for summary judgment, is affirmed.
 
 OPINION
 
 4
 From 1975 to 1978, Global, a joint venture between Atlas Corporation and Owl Constructors, Inc., was under contract with the National Aeronautics and Space Administration (NASA) to provide operating support services at the John C. Stennis Space Center (SSC), a NASA field center located in Hancock, Mississippi. During the contract term, Global performed work requests submitted by the Coast Guard, then a resident agency at SSC. Among the tasks that Global performed was the fabrication of several prototype retrieval systems for a High Seas Oil Containment System (HSOCS) from designs prepared by other NASA contractors.
 
 
 5
 Approximately fourteen months after the expiration of the contract term, a Coast Guardsman, Danny Bottoni, was injured while moving an HSOCS barrier. As a result of the accident, Bottoni filed suit for damages in the United States District Court for the Northern District of Mississippi, against Offshore Services, Inc. and Atlas Corporation (one of Global's joint venturers).
 
 
 6
 Global intervened in the suit as a defendant/third-party plaintiff. Global denied that it had any role in the design, manufacture or use of the snap links, the only allegedly defective part of the retrieval system. Through discovery, Global established that it had no involvement in the system that injured Bottoni. The Bottoni suit was settled, and Global and Atlas Corporation were dismissed without making any monetary contribution to the settlement.
 
 
 7
 Global applied to NASA for reimbursement of legal expenses incurred in defending the Bottoni lawsuit. The contracting officer denied payment on the basis that the legal expenses did not arise out of the performance of the contract. Global appealed to the Board, which granted the government's motion for summary judgment and dismissed Global's appeal. Global Associates, NASA BCA No. 187-1, 88-2 BCA para. 20,723 (1988).
 
 
 8
 Global then appealed to this court. We vacated the Board's decision and remanded the suit for the Board to focus on whether its determination is based upon the conclusion that Global had no responsibility for the accident, or upon the conclusion that the Bottoni lawsuit was too attenuated from the contract's performance. Global Associates v. United States, 871 F.2d 1097 (Fed.Cir.1989), unpub., 1989 U.S.App. LEXIS 3544.
 
 
 9
 On remand, the Board again granted the government's motion for summary judgment and dismissed Global's appeal. The Board determined that the Bottoni lawsuit did not involve liabilities to third persons arising out of the performance of the contract. Global Associates, NASA BCA No. 187-1, 90-1 BCA para. 22,294 (1989). From that decision, this appeal was taken.
 
 
 10
 The sole issue in this case is whether the indemnity provisions of the Global/NASA contract require the government to reimburse Global for the legal expenses it incurred in defending the Bottoni lawsuit. The "Insurance Liability to Third Persons" clause contained in the contract provides, in pertinent part:
 
 
 11
 (c) The Contractor shall be reimbursed: (i) for the portion allocable to this contract of the reasonable cost of insurance as required or approved pursuant to the provisions of this clause, and (ii) for liabilities to third persons for loss of or damage to property (other than property (A) owned, occupied or used by the Contractor or rented to the Contractor, or (B) in the care, custody, or control of the Contractor), or for death or bodily injury, not compensated by insurance otherwise, arising out of the performance of this contract, whether or not caused by the negligence of the Contractor, his agents, servants or employees; provided, such liabilities are represented by final judgments or by settlements approved in writing by the Government, and expenses incidental to such liabilities.
 
 
 12
 Global argues that the clause is ambiguous and, therefore, we must construe the contractual language against the government, the drafter of the contract.
 
 
 13
 A contract between a corporation and the government must be interpreted by application of the same principles of law applicable to contracts between private individuals. Reading Steel Casting Co. v. United States, 268 U.S. 186, 45 S.Ct. 469 (1925). The principles of general contract law apply to government contracts. Priebe & Sons v. United States, 332 U.S. 407, 68 S.Ct. 123 (1947). In interpreting a contract, the language of the contract must govern its interpretation, and words are to be given their plain and ordinary meaning. Thanet Corp. v. United States, 591 F.2d 629 (Ct.Cl.1979). Moreover, the language employed in an indemnity clause must clearly show an intention to indemnify against the loss or liability involved. See Allied Hotels Co., Ltd. v. H. & J. Construction Co., Inc., 376 F.2d 1 (10th Cir.1967); Fidelity & Casualty Co. of New York v. J.A. Jones Construction Co., 325 F.2d 605 (8th Cir.1963).
 
 
 14
 A contract is ambiguous if it is susceptible to two different and reasonable interpretations, each of which is found to be consistent with the contract language. Cherry Hill Sand & Gravel Co., Inc. v. United States, 8 Cl.Ct. 757 (1985). Contract terms are not rendered ambiguous merely because the parties disagree as to their meaning. Blake Construction Co., Inc. v. United States, 597 F.2d 1357 (Ct.Cl.1979); Southern Construction Co. v. United States, 364 F.2d 439 (Ct.Cl.1966).
 
 
 15
 The only reasonable interpretation of the indemnity clause is that it means exactly what it says--the contractor shall be reimbursed for liabilities to third persons and expenses incidental to such liabilities, but only if the liabilities are represented by final judgment or by approved settlements. The clause does not provide for reimbursement for legal expenses incurred by the contractor in proving that it had no liability to third persons, such as Bottoni.
 
 
 16
 Global argues that it is against public policy to find that the contract does not provide for reimbursement of legal expenses associated with proving that it was not liable; to so construe the contract would reward the contractor for losing the third party claim but penalize it for a successful defense. Global contends that such a finding would encourage a poor defense or no defense at all. This argument also falls short.
 
 
 17
 As we read the terms of the contract, the government is not obliged to reimburse a contractor for legal expenses incurred in defending a claim such as that made by Bottoni against Atlas.[1] The government could choose to provide by contract, as it did, for indemnification of expenses incurred in defending only those suits which reasonably arise out of the contract. The interpretation urged by Global would make the government the insurer of its contractors.
 
 
 
 *
 Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 While the issue is not raised by the United States, it should be noted that appellant Global was not sued by Bottoni; appellant intervened and became a "voluntary defendant."