H. B. Deal & Company, Inc. *v.* Head.

4-9702                                              · 251 S. W. 2d 1017

Opinion delivered October 20, 1952.

Rehearing denied November 27, 1952.

*Jabe Hoggard* and *Leo F. Laughren,* for appellant.

*Surrey E. Gilliam, Melvin E. Mayfield, Stein & Stein, Melvin T. Chambers* and *Harry Colay,* for appellees.

Ed. F. McFaddin, Justice. The appellees, Thomas L. Head, *et al.,* (hereinafter called "Plaintiffs"), were employed by appellant, H. B. Deal & Company (hereinafter called "Deal"), in constructing the Ozark Ordnance Plant in El Dorado; and plaintiffs filed action against Deal in the Union Circuit Court, claiming additional amounts to be due each of the plaintiffs for overtime work. While the said action was pending in the Circuit Court, Deal unsuccessfully petitioned this Court for a writ of prohibition. See *Deal* v. *Marlin,* 209 Ark. 967, 193 S. W. 2d 315. After we denied prohibition, the Circuit Court action proceeded to trial on its merits before the Circuit Judge with a jury being waived.

The testimony established: (a) that the United States Government, acting through its Corps of Engineers, made a contract with Deal for the construction of the Ozark Ordnance Plant near El Dorado; (b) that in the contract, Deal was referred to as "constructor", and the contract provided in Article 10:

"The constructor shall compensate laborers and mechanics for all hours worked by them in excess of eight hours in any one calendar day, at a rate not less than one and one-half times the basic rate of pay of such laborers and mechanics. . . ."; and (c) that the construction of the Ordnance Plant began shortly after February 16, 1942, and continued for about eighteen months, and the plaintiffs were employees of Deal in the construction of the Ordnance Plant. This action by plaintiffs was commenced in 1943; and the number of hours worked and the overtime pay claimed by each plaintiff was developed in the testimony.

The Trial Court in rendering judgment for the plaintiffs made—*inter alia*—findings of fact and declarations of law to the following effect:

(1) The plaintiffs in working for Deal, were entitled to the benefits of the Fair Labor Standards Act of the United States (See U.S.C.A. Title 29, § 201 *et seq.*) and, therefore, were entitled to recover not only for overtime, but for penalty and attorneys fees, as allowed by the said Act.

(2) In the alternative, if the plaintiffs were not entitled to recover under the provisions of the said Fair Labor Standards Act, then at all events, the plaintiffs were entitled to recover for their overtime—less penalty and attorneys fees—under the provisions of the contract between Deal and the United States for the construction of the Ozark Ordnance Plant.

From a judgment for the plaintiffs in accordance with the provisions of the Fair Labor Standards Act, Deal brings this appeal, and claims that the Circuit Court was in error in each and both of the two conclusions just stated. The record is voluminous. The transcript con-

tains 3,565 typewritten pages, and the briefs contain 1,174 printed pages. Many questions are urged by the one side and resisted by the other in the splendid briefs before us; but we conclude that we need only decide the two points hereinafter discussed.

I. *Applicability of the Fair Labor Standards Act.* That plaintiffs worked for Deal in the construction of the Ordnance Plant is admitted, but we hold that the plaintiffs are not entitled to recover under the provisions of the Fair Labor Standards Act (U.S.C.A. Title 29, § 201). This conclusion is reached because Deal was engaged in *original construction* of a plant, and interstate commerce was not involved in such original construction. There are numerous cases holding that the original constructor of a war plant is not within the purview of the Fair Labor Standards Act. We cite only a few:

(1) In *Noonan* v. *Fruco Const. Co.*, 140 Fed. 2d 633, the Eighth Circuit Court of Appeals, in holding that plaintiff's working for a constructor in the building of an ammunition plant were not entitled to invoke the benefits of the Fair Labor Standards Act, said:

"But the plant itself was not a commodity which could be the subject of interstate commerce. It was permanently placed upon an immovable site of land and was not a thing transportable in commerce nor a devise or object upon which other articles could be shipped to other states. Clearly the activities which went into its construction were local. . . . We are unable to find here that the watchman employed to guard the construction of a new building are in an occupation 'necessary' to the production of goods for commerce, even though it is contemplated that the products manufactured in the building will be sent into interstate commerce."

(2) In *Parham* v. *Austin Co.*, 158 Fed. 2d 566, the Circuit Court of Appeals of the Fifth Circuit, in holding that watchmen and guards employed by the constructor in constructing a bomber plant for the United States were not entitled to recover for overtime under the Fair Labor Standards Act, said:

"The period of employment covered by their suit is prior to any production of bombers in the plant. Their employers' connection with the plant ended upon its completion. . . . It was a new plant, as distinguished from an addition to an existing plant. Materials from out of the state were shipped to the job by train and by truck and used in the construction of the plant where they came to rest. . . . There can be no process or occupation necessary to the production of goods for commerce unless goods are produced."

(3) In *Kelly* v. *Ford,* 162 Fed. 2d 555, the Circuit Court of Appeals of the Third Circuit, in holding that employees engaged by Ford in the construction of an aircraft engine plant for the United States were not entitled to recover for overtime under the provisions of the Fair Labor Standards Act, said:

"Original construction is definitely beyond the contemplation of the Act, and appellant's employment cannot be fairly removed from that category. . . . The facts here present no justification for holding that the appellant, in his work for the defendant employer, was engaged in commerce, or in the production of goods for commerce, within the scope of the Wages and Hours Act."

(4) In *McDaniel* v. *Brown,* 172 Fed. 2d 466, the Circuit Court of Appeals for the Tenth Circuit, in holding that employees of constructors building a naval ammunition depot for the United States were not entitled to recover for overtime under the Fair Labor Standards Act, said:

"The work performed by the contractors under the contract was entirely original construction of new buildings and new facilities."

(5) A most persuasive case is that of *Spencer* v. *Porter,* from the Eighth Circuit Court of Appeals. The first opinion, under date of April 19, 1949, is reported in 174 Fed. 2d 731; and in that opinion, the Circuit Court of Appeals held that employees working for Porter in the construction of the Pine Bluff Arsenal for the United States were not entitled to recover for overtime under the

Fair Labor Standards Act. After reaching the foregoing decision, the Circuit Court of Appeals delayed a rehearing pending the decision by the Supreme Court of the United States in *U. S. Cartridge Company* v. *Powell*, Eighth Circuit, 174 Fed. 2d 718. The decision of the Supreme Court of the United States in the Cartridge case was delivered on May 8, 1950. (See 339 U. S. 497, 94 L. Ed. 1017, 70 S. Ct. 755). After the said decision of the Supreme Court of the United States, the Circuit Court of Appeals of the Eighth Circuit, rendered a second opinion in the case of *Spencer* v. *Porter*, as reported in 183 Fed. 2d 445; and in that second opinion, the Circuit Court of Appeals, having before it the United States Supreme Court opinion in the Cartridge case, said:

"This court held in the instant case that, insofar as the appellants' claims were based on services rendered by them in connection with the construction of the Pine Bluff Arsenal in Arkansas, the appellants were not within the coverage of the act. We adhere to that holding."

(6) The case of *Hartmaier* v. *Long*, decided by the Supreme Court of Missouri on March 11, 1951, (361 Mo. 1151, 238 S. W. 2d 332), deserves special notice, because the United States Supreme Court denied *certiorari* in the case on October 8, 1951. (See 342 U. S. 833, 96 L. Ed. 35, 72 S. Ct. 48.) The Supreme Court of Missouri held that the employees of Long, engaged in the construction of an aircraft engine plant for the United States, were not entitled to recover for overtime under the Fair Labor Standards Act. Nearly every question presented in the present case was considered and decided by the Supreme Court of Missouri in the Hartmaier case; and, as aforesaid, the United States Supreme Court denied *certiorari*.

In view of these cases and others to like effect,[1] we unhesitatingly hold that the plaintiffs are not entitled

[1] See Annotation in 8 A. L. R. 2d 738, wherein the holdings of the many cases are summarized in this language: "In the absence of particular factors affecting the situation, construction of new buildings, not amounting to reconstruction or an extension or enlargement of any existing building or plant, is generally regarded as not being in itself such an activity as to bring it within the contemplation of the Fair Labor Standards Act."

to invoke the Fair Labor Standards Act in the case at bar.

Strongly relied on by plaintiffs is the evidence that this Ozark Ordnance Plant was one of a series of plants, each designed to be a part of the process of manufacturing ammunition from the raw stage to the finished product. Since these plants were located in several states, it is claimed that the Ozark construction was a part of interstate commerce. Contentions to the same general effect were made and denied in *Noonan* v. *Fruco Const. Co.,* 140 Fed. 2d 633. Every bridge across a transcontinental highway, when completed, will be used as a link in interstate commerce, but until the bridge is completed, it is not a link that has been used. Such is the distinction between the case at bar and the case of *Overstreet* v. *North Shore Corp.,* 318 U. S. 125, 87 L. Ed. 656, 63 S. Ct. 494.

Again plaintiffs point out that actual production of ammunition started in some part of the Ordnance Plant on May 13, 1943, and that sixteen of the plaintiffs continued to work for Deal while the plant was still being completed. Plaintiffs claim that this work brought the sixteen so working within the purview of the Fair Labor Standards Act. But the hard fact remains that the plaintiffs were all the time working for Deal in *original construction.* General Sturgis testified without contradiction that Deal constructed the plant under a contract with the Corps of Engineers, and that the completed plant was then turned over to another branch of the armed forces for operation. So plaintiffs, while working for Deal, were engaged in original construction for an entirely different unit of the armed forces than those engaged in the production and manufacture of ammunition. These facts make the case at bar entirely different from those cases which hold that repair in construction is not original construction.

II. *Plaintiffs as Third Party Beneficiaries.* As heretofore stated, the contract between the United States Government and Deal for the construction of the Ozark Ordnance Works stated in Article 10:

"The constructor shall compensate laborers and me-
chanics for all hours worked by them in excess of eight
hours in any one calendar day at a rate not less than one
and one-half times the basic rate of pay of such laborers
and mechanics: . . ."

In *Deal* v. *Marlin,* 209 Ark. 967, 193 S. W. 2d 315,
we said of such provision:

"The government placed the quoted provision in
the contract for the benefit of the workers. They there-
fore had a right to sue on the contract. We have re-
peatedly held that a contract made for the benefit of a
third party is actionable by such third party. *Freer* v.
*J. G. Putman Funeral Home, Inc.,* 195 Ark. 307, 111 S. W.
2d 463, is one such case. Other cases on this point are
collected in West's Arkansas Digest, 'Contracts,' §
187. See, also, 17 C. J. S. 1121. The right of a work-
man to sue a public contractor for wages as fixed by the
wage scale in the contract has been recognized in several
cases, some of which are: *Stover* v. *Winston Bros. Co.,*
185 Wash. 416, 55 Pac. 2d 821; (appeal to U. S. Sup. Ct.
dismissed; 299 U. S. 508, 81 L. Ed. 376, 57 S. Ct. 44);
*Fata* v. *S. A. Healy Co.,* 289 N. Y. 401, 46 N. E. 2d 339,
144 A. L. R. 1031; *Novosk* v. *Reznick,* 323 Ill. App. 544,
56 N. E. 2d 318. See, also, Annotation in 144 A. L. R.
1035."

We adhere to the above statement. The plaintiffs were
not mere "incidental beneficiaries",[2] but were "direct
beneficiaries",[3] and are entitled to proceed under the
American majority rule stated in 12 Am. Jur. 825:

"Stated in general terms and leaving out of con-
sideration the limitations recognized in various juris-
dictions, the rule in a great majority of American juris-
dictions is that a third person may enforce a promise
made for his benefit, even though he is a stranger both
to the contract and the consideration."

[2] The rule as to incidental beneficiaries is stated in 12 Am. Jur.
834. A case involving incidental beneficiaries is *German Alliance Co.*
v. *Home Water Co.,* 226 U. S. 220, 57 L. Ed. 195, 33 S. Ct. 32.

[3] The rule as to direct beneficiaries is stated in 12 Am. Jur. 833,
and see also Annotations in 81 A. L. R. 1271 and 148 A. L. R. 359.

The entire Article 10 of the contract is several pages in length and clearly demonstrates that the Government placed such provisions in the contract for the direct benefit of persons, such as the plaintiffs, who did work for Deal in the construction of the Ozark Ordnance Works. Thus the plaintiffs come within the holdings which allow third party beneficiaries to invoke the contract.

### Conclusion

The Circuit Court judgment was based on the view that the Fair Labor Standards Act applied, and that judgment is reversed, as stated in Topic I, *supra;* but the portion of the judgment holding—in the alternative—that the plaintiffs are entitled to recover as third party beneficiaries, is affirmed; and the cause is remanded to the Circuit Court, with directions to enter judgments—on the record in this case—for the plaintiffs as third party beneficiaries, in accordance with the views herein expressed. This being an action at law, it follows that the costs of this appeal are taxable against appellees; but all other costs are taxable against appellant.

The Chief Justice and Justice WARD dissent.