294 F.2d 301
 AETNA INSURANCE COMPANY, Appellant,
v.
Saul EISENBERG, Bleidt-Banks Cleaners, Inc., Brooksher T.
Banks, D/B/A Fashion Park Cleaners, James T. Wright, Robert
Feazell, Jimmy Albright, Kelly Clarke and Johnny Glaze, Jr.,
Grace Plasse, Mrs. Judy, Smith, Marilyn Funk, Mattie Porter,
Mrs. R. E. Jeter, Curren G. Wood and Carol Wood, Valeria S.
Darrow, Charlotte Walls McCrary, Mrs. Hazel Cecil, Venwal
Marsh and Ann T. Marsh, A. C. Kolb and Amanda Kolb, O. F.
Jacobs, Ivon Gallegly and Nell Gallegly, Charles M. Jeffries
and Cora Nell Jeffries, Mildred Stein, Bess Johnston, Appellees.
 No. 16671.
 United States Court of Appeals Eighth Circuit.
 Sept. 12, 1961, Rehearing Denied Oct. 7, 1961.
 
 James I. Teague, of McMillen, Teague & Coates, Little Rock, Ark., made argument and filed brief for appellant.
 Abner McGehee, of Cockrill, Laser & McGehee, Little Rock, Ark., made argument for the appellees. John B. Thurman, Jr., Barber, Henry Thurman & McCaskill and Louis L. Ramsay, Jr., Coleman, Gantt & Ramsay, Pine Bluff, Ark., were with Abner McGehee, Little Rock, Ark., on the brief for appellees.
 Before GARDNER, Senior Circuit Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.
 VOGEL, Circuit Judge.
 
 
 1
 The Aetna Insurance Company appeals herein from the dismissal, after hearing, of its petition for a declaratory judgment under 28 U.S.C.A. 2201, wherein it sought to have a Furriers' Customers Basic Policy of insurance declared void due to appellee Eisenberg's alleged fraud in under-reporting values of property covered thereby. The District Court's opinion is published at 188 F.Supp. 415. The action was commenced after an investigation of fire losses at Eisenberg's establishment revealed that the latter, a furrier in Little Rock, Arkansas, had greatly understated the value of customers' stored garments in his reports to appellant. Such reports were required by the policy contract and were the basis for determining the policy premiums. Eisenberg and Eisenberg' customers, owners of the stored property, who were allowed to intervene under Federal Rules of Civil Procedure, Rule 23(a)(3), 28 U.S.C.A., to prevent multiplicity of suits, filed counterclaims seeking, inter alia, a determination that appellant was fully liable under the policy and for redress for specific alleged losses. Some of the intervenors also filed cross-claims against Eisenberg.
 
 
 2
 The policy in question purportedly insured Eisenberg for a limit of $200,000 on his account 'and for account of customers hearinafter described,' the customers being the owners of all types of wearing apparel accepted by Eisenberg for storage, alteration, cleaning, repairing or remodeling. The policy excluded property belonging to Eisenberg, his subsidiaries or affiliates. Upon receiving garments for storage, etc., Eisenberg would, in accordance with the provisions of the Basic Policy, issue a 'Storage Receipt' which contained the following statement:
 
 
 3
 'THE FURS, garments or property covered by this Receipt are INSURED as Stipulated Below for $........, under Blanket Policy Number .........., issued by the ........ Insurance Company.'
 
 
 4
 The total amount of customer declared value, representing the insured amount, would be filled in as well as the number of the policy, and, except where inadvertently omitted, the name 'Aetna' would be written in the last bank. As to the issuance of these 'receipts' the policy provided as follows:
 
 
 5
 '1. Each receipt (other than a temporary or interim receipt) given to customers shall in effect provide that
 
 
 6
 '(a) the customer accepts the receipt as correct in all respects unless the customer notifies the named Assured in writing within ten days after the date of issue thereof of any error or irregularity therein;
 
 
 7
 '(b) the named Assured will have effected for the benefit of the customer insurance on each article listed in the receipt which shall, in terms usual to such insurance, cover against loss by fire and theft for the value set opposite each item, which value shall also be stated to be the limit of the named Assured's liability for any loss of or damage to said article;
 
 
 8
 '(c) the provisions of the receipt shall inure to the benefit of the Company to the same extent that they inure to the benefit of the named Assured;
 
 
 9
 '(d) the provisions of the receipt shall not extend in kind or amount the insurance provided by the Policy;
 
 
 10
 '(e) it supersedes any temporary or interim receipt given by the named Assured.
 
 
 11
 '2. The named Assured shall use due diligence to maintain during the period of the Policy such protective safeguards as are stated in the proposal for this Policy.
 
 
 12
 '3. The named Assured shall keep an accurate record of all receipts issued which record shall show with respect to each article the customer's name and address, description, amount of value stipulated by the customer and where located. Such record shall be open for inspection by authorized representatives of the Company at all reasonable times during the Policy Period and for one year thereafter.
 
 
 13
 '4. The named Assured shall report to the Company not later than the 15th day of every month the aggregate amount of values set forth in all outstanding receipts (hereinafter called values) as of the last day of the preceding month and pay premium thereon at the rates herein provided. If more than one location is used for storage of the property, the report shall show the values at each respective storage location and separately the total values elsewhere.
 
 
 14
 '7. (a) Any loss at the option of the Company may be paid to the named Assured or adjusted with the and paid to the customer or the owner of the property.'
 
 
 15
 The policy did not carry a penalty or forfeiture clause in the event of false or fraudulent under-reporting of values.
 
 
 16
 By endorsement the policy also provided that, in addition to insurance under the 'Receipts' method referred to, Eisenberg's customers could, if they wished, obtain through Eisenberg a 'Personal Fur Floater Policy' or certificate which would cover the customer as the named insured for a specific amount as indicated therein and regardless of where the garment might be kept. A storage recipt was also issued in connection therewith. The 'Personal Jur Floater Policies' or certificates, as they are sometimes referred to, were prepared by the company in books of 25. The company's agent would take a complete book to Eisenberg and leave it with him after countersigning the certificates as Aetna's local agent. The customer therefore had a choice of receiving insurance under the 'Receipts' above referred to or the purchase of a one-year Personal Fur Floater Policy. If the floater policy was desired, Eisenberg would fill in the pertinent parts of the policy, deliver the original to the customer and give to the local agent carbon copies for the local agent's and the company's files.
 
 
 17
 As to those individual floater policies issued by Eisenberg, the appellant admitted in its complaint:
 
 
 18
 '* * * With respect to these certificates, the plaintiff (appellant) is informed that the local agent had advised the defendant (Eisenberg) that the amount of declared values in those certificates need not be reported, but that the report should include only the amount of declared values upon those storage receipts where no individual policy was issued. Therefore the plaintiff (appellant) is accepting liability on those certificates as direct policies to the individual customer named in the certificate and will attempt to adjust those claims as separate policies. The amount involved in these certificates is not substantial in relation to the potential total involved in what was actually on hand in value and what was reported.'
 
 
 19
 We are, therefore, concerned in this proceeding with the rights of those customers who chose to have their garments insured under the 'Storage Receipts' method provided by the Basic Policy instead of the individual floater policies or certificates issued thereunder for which Aetna accepts full responsibility.
 
 
 20
 As noted in the quoted paragraphs 3 and 4 of the Basic Policy, supra, Eisenberg was required to keep accurate records of all storage receipts and submit a monthly report to appellant of the aggregate amount of values in all outstanding receipts. All premiums were based upon such declared values on garments in storage and also on the declared values under the individual floater policies as computed by Aetna's local agent. The evidence indicated that the local agent usually called upon Eisenberg once each month to obtain the monthly report. The latter would tell the agent the amount of the declared values, whereupon the agent would fill in this sum upon a special report form. Eisenberg would then sign the report. The agent did not participate in any computation of values so reported but accepted the figures as given by Eisenberg.
 
 
 21
 On July 22, 1958, a fire occurred which destroyed or damaged much of the stored property. During the investigation which followed, it became apparent that there had been under-reporting of values. An independent audit of Eisenberg's records subsequently disclosed that there had been under-reporting of almost $100,000. Charging that this constituted fraud, Aetna asked the court to declare no liability on its Basic Policy excepting as to the Personal Floater certificates issued thereunder.
 
 
 22
 Eisenberg admitted under-reporting and that he had only 'guessed' at the number and value of garments stored for each particular month's report. He testified that he didn't know it was necessary to report full valuation of the garments and that only after the fire did he become aware of the fact that the premiums were based upon such tabulations. The District Court, however, found that Eisenberg 'knew the purpose of the monthly reports, and * * * how to properly prepare them' and the evidence overwhelmingly supports such finding. 188 F.Supp. at page 419.
 
 
 23
 For many years prior to the date of the fire Eisenberg had advertised by radio, mail, publication and also on the front of his establishment, to the effect that the Aetna Insurance Company was the insurer of the garments stored. Aetna was fully aware of such advertising and participated therein by furnishing Eisenberg with advertising 'cuts' composed of the Aetna Insurance Company name and emblem. These cuts were used in Eisenberg's advertising with the legend: 'And as an added precaution, the contents of our vaults are insured by the AETNA INSURANCE CO You get a 12-month individual insurance protection.' The only objection Aetna had ever made to the advertising concerned a claim therein that the insurance protected against moths. Upon the agent's request that claim was thereafter omitted.
 
 
 24
 Appellees-customers testified that in bringing their garments to Eisenberg for storage, they relied upon either the Aetna name in the advertisements or upon representations as to Aetna coverage by Eisenberg.
 
 
 25
 The District Court held that Aetna was not entitled to the relief it sought against the defendant and the third-party intervenors. It, however, granted judgment in favor of Aetna against Eisenberg for the amount of the premiums due upon the declared values in storage as of July 22, 1958, but which had not been paid or otherwise collected. In all other respects it dismissed Aetna's action. As to the third-party intervenors, it held:
 
 
 26
 '* * * Third-party intervenors, as a class, are hereby granted declaratory judgment in their favor against plaintiff, Aetna Insurance Company. It is the judgment of this court that the Aetna Insurance Company is not entitled to avoid, as against said third-party intervenors, its liability under its Furriers' Customers Basic Policy No. 5603 in favor of Saul Eisenberg, and that this policy is in full force and effect as to their claims of loss. The third-party intervenors may enforce the policy according to its terms as of July 22, 1958; as to these claims, Aetna Insurance Company may not assert any defenses based upon false or fraudulent reporting of values in storage under the terms of said policy, nor otherwise assert against their claims any defenses it might have asserted against Saul Eisenberg as the named insured in said policy. In so far as the third-party intervenors have sought individual judgments, with statutory penalties, against plaintiff, their causes of action are dismissed without prejudice. The third-party intervenors may recover their costs in this matter. Jurisdiction is retained of this cause solely for the purpose of effecting this judgment.'
 
 
 27
 From such judgment Aetna appeals.
 
 
 28
 Aetna's first contention is that the trial court erred in holding 'that the contract between Aetna and Eisenberg was distinct and separate from that created between the bailee's customers and Aetna by the issuance of the storage receipt authorized by the policy and the payment by the customer of the storage fee which included the insurance premium.' Aetna contends that the court's holding 'created a new contract between the parties' and that it added terms or conditions not agreed upon or consented to by the party to be charged. It points out that the policy begins by saying, 'Aetna Insurance Company * * * In Consideration of the Stipulations named herein, Does Insure Saul Eisenberg, hereinafter called the Assured' and that all the subsequent wording of the policy identifies Eisenberg as the assured. Its position is that, 'While it is true that the goods which were being insured were the goods of Eisenberg's customers, nevertheless the assured is Saul Eisenberg, and the contract is between Saul Eisenberg and the Aetna Insurance Company, and not between the bailee's customers and the insurance company.' It maintains that the intervenor-customers or third-party beneficiaries must accept the contract as it existed between Aena and Eisenberg and that any defenses Aetna might have as to claims by Eisenberg would be sound and maintainable against the intervenor-customers.
 
 
 29
 It seems perfectly clear that the policy here was a third-party beneficiary contract. 4 Corbin, Contracts, 774 (1951); Restatement, Contracts, 133, p. 155, illust. 9. It does indeed insure Saul Eisenberg and identifies him as the named assured but it insures him for his account 'and for account of customers hereinafter described'. The policy provided for the issuance of the Storage Receipts to the customers and for the insurance therein. The Storage Receipts covered only the property of the third-party beneficiaries, the intervenors. When storing their garments with Eisenberg, the customers, after indicating which type of Aetna insurance they desired, paid the premium to Eisenberg as a part of the charges. Aetna had the option under the Basic Policy of adjusting a loss with the named assured, Eisenberg, or adjusting it with the customers or owners of the property. There was no penalty or forfeiture clause in the event of false or fraudulent under-reporting of values. The rights of the third-party beneficiaries here were in no sense based on 'subrogation'. The third-parties are true beneficiaries and their rights are direct against Aetna and not dependent upon Eisenberg. As the Trial court correctly held, the owners of the property were the real prties in interest and as such could maintain an action on the policy directly against Aetna. Commodity Credit Corp. v. Henwood, 8 Cir., 1942, 126 F.2d 145; H. B. Deal & Co. v. Head, 1952, 221 Ark. 47, 251 S.W.2d 1017; Freer v. J. G. Putman Funeral Home, 1937, 195 Ark. 307, 111 S.W.2d 463; Carolus v. Arkansas Light & Power Co., 1924, 164 Ark. 507, 262 S.W. 330; 81 A.L.R. 1271, 1279, 1296; 61 A.L.R. 720, 723; Davis, 'Rights & Liabilities of Principals in the Insurance Relationship-- A Partial Survey', 5 Ark.L.Rev. 24, 37 (1950-51).
 
 
 30
 After concludion that the customers had the right to maintain a direct action against Aetna upon the policy, the trial court hen stated, 188 F.Supp. at page 419:
 
 
 31
 '* * * The point at issue in this cause concerns the defenses that Aetna may assert against such third-party beneficiaries: Aetna maintains that the beneficiaries must accept the contract with all of the defects it would have in the hands of the promisee, Eisenberg. The intervenor-customers insist that they, as a class, have demonstrated a reliance upon, and a change of position because of, the insurance contract, so that they are not subject to defenses personal to the promisor as against the promisee.'
 
 
 32
 The general rule in such situation is well stated in 4 Corbin, Contracts, 818. pages 273-274, 276 (1951):
 
 
 33
 '* * * After the contract is made, however, and the primary legal relations of promisor, promisee, and beneficiary have been created, it is not at all correct to say that supervening defenses that would be good against the promisee are good also against the beneficiary. The right of the promisee and the right of the benedificary, although born of the same creative factors and with the same inherited defect, now have separate lives of their own; and the vicissitudes that are met by the one do not necessarily affect the other. Thus, the promisee has power to discharge the promisor's duty to himself; but hs power to discharge the promisor's duty to the third party is almost wholly lacking. Wrongful acts of the promisee, subsequent to the making of the contract, that would greatly affect his own right, may not affect the beneficiary's right at all.
 
 
 34
 'The defenses as against the third party in suits by him against the promisee and against the promisor are different because he is suing two different persons on different causes of action. The defenses available to the promisor when he is sued on his promise by the promisee and by the third party, while more commonly available in both suits because both are to enforce the same promise, are frequently different for the reason that the two plaintiffs are separate persons, each having separate powers to affect his own legal right.'
 
 
 35
 See, also, 153 A.L.R. 190-191.
 
 
 36
 Nevertheless, Aetna contends that the trial court erred in holding that 'against the bailee's customers Aetna may not maintain the defense of Eisenberg's false monthly reports' though Eisenberg's fraud in under-reporting was a good defense aginst any claim by Eisenberg. In support of this contention, appellant in its brief cites authorities dealing with the proposition that where a third party elects to avail himself of a contract entered into between others for his benefit, he makes the contract his own, and that the promisor may set up any defense against him which he could have set up as against the promisee. Appellant's main error in the reliance upon these authorities is its assumption that the question of estoppel is not relevant. In fact, the question of estoppel is decisive of the issue. Examining the authorities cited by appellant in this light, it will be seen that these authorities have either recognized the exception of estoppel to the general rule (e.g., Commodity Credit Corporation v. American Equitable Assur. Co., 1939, 198 Ark. 1160, 133 S.W.2d 433, 441; Assets Realization Co. v. Cardon, 1928, 72 Utah 597, 272 P. 204, 206; 12 Am.Jur., Contracts, p. 842; 81 A.L.R. 1292); or have dealt with situations where the question of estoppel was indicated to be absent regarding the promisor (e.g., United States v. Campbell, 4 Cir., 1943, 139 F.2d 424; Commodity Credit Corporation v. American Equitable Assur. Co., supra; Llewellyn v. Butler, 1915, 186 Mo.App. 1525, 172 S.W. 413); or where the question of estoppel was not raised (e.g., Rouse v. United States, 1954, 94 U.S.App.D.C. 386, 215 F.2d 872; Fish v. First Nat. Bank, 9 Cir., 1907, 150 F. 524); or were not in point (e.g., Malanaphy v. Fuller & Johnson Mfg. Co. 1904, 125 Iowa 719, 101 N.W. 640; Kelly v. Grimshaw, 1946, 161 Kan. 253, 167 P.2d 627, 163 A.L.R. 1290; McLean Const. Co. v. Globe Indemnity Co., D.C.W.D.Mo.1958, 168 F.Supp. 318; Ellis v. Harrison, 1891, 104 Mo. 270, 16 S.W. 198); or where the court did not sustain appellant's position (e.g., Fish v. First Nat. Bank, supra; Waggoner v. Herring Showers Lumber Co., 1931, 120 Tex. 605, 40 S.E.2d 1).
 
 
 37
 It is the claim of Aetna that there is no estoppel in this case, that the lower court did not find an estoppel, and that accordingly this court should disregard the estoppel arguments of the appellees. The contention is unsound. Aetna is estopped to make either of two claims: First, that they were unaware of the fraudulent misrepresentations of Eisenberg; and, second, that there was no agency relationship between Aetna and Eisenberg.
 
 
 38
 As to the first, the evidence shows that although by the terms of the contract the records of Eisenberg 'shall be open for inspection by authorized representatives of the Company at all reasonable times during the Policy Period and for one year thereafter', there had only been two such inspections in the 24 years that the policy was in effect, occurring in 1950 and 1951. Further, the duly authorized representative of Aetna merely took the furrier's estimate of the value of the furs in bailment at the time, though such representative was present in the shop at the time these estimates were made and had ample opportunity to inspect.
 
 
 39
 As to the second ground of estoppel, everything that Aetna did indicated to the world that Eisenberg was Aetna's agent and empowered to solicit insurance business for it, to issue its policies and to bind it contractually for insurance coverage. It furnished Eisenberg with advertising cuts of the Aetna trademark and name which Eisenberg used extensively in all of his advertising. He was permitted to maintain large signs in his shop windows which disclosed that Aetna insurance was available on garments stored with him. This was established custom over a periof of many years. That Aetna was familiar with this advertising, permitted and encouraged it and cooperated therein is further indicated by the fact that Aetna, through an agent, on one occasion advised Eisenberg to eliminate from his advertising statements to the effect that the insurance coverage included damage by moths. Additionally, it permitted him to have its policies in his possession, to solicit insurance thereon, to fill out and issue individual policies as well as the Storage Receipts, both providing insurance with Aetna, and it allowed him to collect premiums thereon.
 
 
 40
 The clear words of Judge Miller, speaking of Arkansas law in Hawkins v. Merrill, Lynch, Pierce, Fenner & Beane, D.C.W.D.Ark.1949, 85 F.Supp. 104, 120, are apposite here:
 
 
 41
 'The facts do not disclose any express contract of agency between the defendants and Waddy or that he possessed any actual authority to act as the agent of defendants, but if the defendants by acts or conduct knowingly caused or permitted Warddy to appear as their agent to the injury of plaintiffs and plaintiffs dealt with Waddy in good faith and in the exercise of reasonable prudence on their part the defendants are estopped to deny the agency. Agency by estoppel can be invoked by plaintiffs only they knew and relied upon the conduct of the defendants.'
 
 
 42
 Certainly under the circumstances of the instant case, Aetna should be estopped from using the defense that Eisenberg failed to maintain and report accurate records of values upon which premiums were necessarily based, and from contending that there was no agency relationship between Aetna and Eisenberg. This result is fortified by the established rule of law in Arkansas that if one of two innocent parties must suffer, the one who put it in the power of a third person to perpetrate the fraud should suffer the loss. Fireman's Fund Ins. Co. v. Leftwich, 1936, 192 Ark. 159, 90 S.W.2d 497; Williams v. Hulse, 1931, 184 Ark. 855, 43 S.W.2d 723; Merchants' Nat. Bank v. Home Bldg. & Savings Ass'n, 1929, 180 Ark. 464, 22 S.W.2d 15. Here if either Aetna or the intervenor-customers, both innocent parties, must suffer, certainly Aetna, which allowed Eisenberg to solicit for it as its agent, gave him the power to perpetrate the fraud and had it in its power to prevent the fraud by making the provided-for audits, should suffer the loss rather than the intervenor-customers. Peoples National Bank of Little Rock v. Linebarger Construction Co., 1951, 219 Ark. 11, 240 S.W.2d 12.
 
 
 43
 The question, raised by Aetna, of whether the trial court found Aetna 'estopped' or based its conclusion on other grounds is of no real importance here because as the Supreme Court of the United States said in Jaffke v. Dunham, 1956, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314, certiorari denied, 1958, 355 U.S. 835, 78 S.Ct. 55, 2 L.Ed.2d 46:
 
 
 44
 'A successful party in the District Court may sustain its judgment on any ground that finds support in the record.'
 
 
 45
 Judge Thomas, Speaking for this court in Crossett Lumber Co. v. United States, 8 Cir., 1937, 87 F.2d 930, 932, 109 A.L.R. 1348, said:
 
 
 46
 'It does not follow, however, that the judgment of the court below must be reversed. A just judgment which is warranted by the record and facts will not be overthrown because it was based on the wrong reason. Baker v. Kaiser (C.C.A. 8) 126 F. 317, 319; Smiley v. Barker (C.C.A. 8) 83 F. 684, 687. In this case the Government set up the defense of recoupment; so, if the facts in the case clearly support that defense, the judgment may stand.'
 
 
 47
 The record here shows that the intervenor-customers or third-party beneficiaries maintained from the very beginning that because of the facts Aetna was estopped. The trial court noted the contention of the intervenors that Aetna was 'estopped to avoid the policy for improper value reports by Eisenberg' and after reciting the facts upon which the claim of estoppel was based, held that Aetna could not 'maintain the defense of Eisenberg's false monthly reports'. The position of the intervenor-customers on the issue of estoppel was, we believe, fully sustained by the District Court even though it did not actually use the word 'estoppel' in the concluding portion of the opinion. As we have demonstrated, the record fully supports the contention that Aetna was estopped.
 
 
 48
 But the question of estoppel aside, the evidence shows that an agency relationship between Aetna and Eisenberg did exist. 66-302, Ark.Stat.Ann. (1947)[1] provides:
 
 
 49
 'And person, who shall hereafter solicit insurance or procure applications, shall be held to be soliciting agent of the insurance company or association issuing a policy on such application, or on a renewal thereof, anything in the application or policy to the contrary notwithstanding.'
 
 
 50
 The Arkansas Supreme Court, in Coal Operators Casualty Co. v. F. S. Neely Co., 1951, 219 Ark. 579, 243 S.W.2d 744, 746, in discussing this statute, quoted from 29 Am.Jur. 112 as follows:
 
 
 51
 '* * * The term 'solicit' in a statute providing that any person who shall solicit an application for insurance shall be regarded as the agent of the corporation issuing the policy includes broadly any person who holds himself out as an insurance agent, and thus invites and receives insurance business, collecting and transmitting premiums, and delivering policies and receipts.'
 
 
 52
 See, also, T. H. Hayes & Sons v. Stuyvesant Ins. Co., 1952, 194 Tenn. 35, 250 S.W.2d 7, 8, where the Tennessee Supreme Court construed a similar statute, Code sec. 6087, which read:
 
 
 53
 'Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured * * *.'
 
 
 54
 The case dealt with an automobile dealer who sold collision insurance in connection with the sale of cars. A purchaser bought a car, notifying the salesman he wanted it for conversion into an ambulance (insurer's grounds for avoidance). The car was supplied. As to the insurance, the purchaser had dealings only with the car dealer. In answer to the insurer's argument that the statute should apply only to persons who hold themselves out as insurance agents, the court said, 250 S.W.2d at page 10:
 
 
 55
 'To accept this construction would be to read into the statute a limitation which is not there. The statute provides that 'any person who shall solicit an application for insurance,' becomes the agent of the company when the company issues the policy on the application. There is no indication that the Legislature intended to limit the meaning of 'person' to insurance agents as a class, and had that been the intent, we must presume that the Legislature would have used the word 'agent' and not 'person."
 
 
 56
 The trial court, apparently independent from, though in accord with, the foregoing Arkansas statute, held, 'It is further apparent that Eisenberg was a soliciting agent for Aetna as to the individual floater policies, Fireman's Fund Ins. Co. v. Leftwich, 192 Ark. 159, 162-63, 90 S.W.2d 497 (1936), and was perilously close to being, if indeed he was not, the agent of Aetna under the basic policy.' By endorsement on the Basic Policy, Eisenberg was authorized to bind Aetna by the issuance of the floater policies. Certainly this included the right to solicit the sale of them. He was given books, each containing 25 individual policies, countersigned by Aetna's local agent, which he was authorized to fill in, deliver and for which he was allowed to collect the premium. Aetna concedes liability thereon. We do not see why there is not equal justification for holding Aetna to similar liability on the Storage Receipts and the insurance provided thereby. Everything that was done by Eisenberg in the issuance of Storage Receipts with their insurance coverage and the floater policies with their enlarged insurance coverage was done under the provisions of the Furriers' Customers Basic Policy as endorsed. That policy provided for the two means or methods of purchasing Aetna insurance through Eisenberg: One, the individual floater policies for which Aetna accepts responsibility; and, two, the Storage Receipts for which it attempts here to escape liability. It attempts to escape this liability by contending that Eisenberg 'was the agent of his customers in taking out this insurance and not the agent of the appellant insurer'. We think the following words, quoted by Judge Miller in Hawkins v. Merrill, Lynch, Pierce, Fenner & Beane, supra, 85 F.Supp. at page 120, as to the law of Arkansas in regard to apparent authority, to be dispositive as to appellant's contention:
 
 
 57
 "This court has often approved the statement of the law as to apparent authority announced in 2 C.J. 573, as follows: 'Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. Pierce v. Fioretti, 140 Ark. 306-313, 215 S.W. 646, 648.' The quotation was again cited with approval in Harris Hyman & Company v. Choctaw Cotton Oil Company, 179 Ark. 780, 785, 19 S.W.2d 1100."
 
 
 58
 Cf. Boone v. General Shoe Corp., 1951, 219 Ark. 340, 242 S.W.2d 138; North River Ins. Co. v. Sanguinetti, 1931, 38 Ariz. 221, 298 P. 922; Boehne v. Guardian Life Ins. Co. of America, 1947, 224 Minn. 57, 28 N.W.2d 54.
 
 
 59
 The facts in the instant case justify application of the foregoing rule, and coupled with Ark.Stat.Ann. 66-302, we must conclude that Eisenberg was the soliciting agent for Aetna in connection with the issuance of the Storage Receipts and that Aetna is therefore bound to the insurance contracts irrespective of the fraud of Eisenberg upon his principal.
 
 
 60
 Affirmed.
 
 
 
 [1]
 Since superseded by Ark.Stat.Ann. 66-2802 (1959), which reads: 'An 'agent' is an individual, firm, or corporation appointed by an insurer to solicit applications for insurance or annuities or to negotiate insurance on its behalf, and if authorized so to do by the insurer, to effectuate and countersign insurance contracts.'