**OZARK MILLING COMPANY, INC.,**
Plaintiff,

v.

**ALLIED MILLS, INC.,** Defendant.
No. F–72–C–1.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

Oct. 26, 1972.

Richard Hipp, of Niblock & Hipp, Fayetteville, Ark., for plaintiff.

Thomas B. Burke, of Wade, McAllister, Wade & Burke, Fayetteville, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

There is before the court the motion of defendant for summary judgment under Rule 56, Fed.R.Civ.P., and plaintiff's response to said motion. Briefs have been submitted by counsel for both parties in support of their respective contentions.

Plaintiff is a corporation organized and existing under the laws of Arkansas with its principal place of business in Washington County.

The defendant is a corporation organized under the laws of Indiana with its principal place of business in Chicago, Illinois.

The amount in controversy exceeds the sum or value of $10,000, exclusive of interest and costs.

Jurisdiction is granted by 28 U.S.C.A., § 1332(a)(1).

### The Pleadings

Suit was commenced December 13, 1971, in the State Circuit Court of Washington County, Arkansas, and timely removed by defendant to this court on January 4, 1972.

In its complaint the plaintiff alleged that it is and has been engaged in the business of milling and distributing feed for domestic animals, including cattle, horses and hogs, since July 6, 1965; that it has built a large customer follow-

ing and substantial good will throughout Washington County and northwest Arkansas.

"That the defendant through its agents and employees on numerous occasions requested that defendant be allowed to service plaintiff's hog feed customers, including furnishing of feed and financing the hog purchases by said hog producers. * * * that if plaintiff would switch plaintiff's hog feed accounts and financing from other feed suppliers to defendant and allow defendant to furnish the hog feed and to finance the hog purchases, that defendant would establish a feed warehouse for northwest Arkansas * * *; would provide adequate hog feed purchase financing for plaintiff's hog feed customers * * * and would provide prompt, efficient and professional service to plaintiff and to plaintiff's hog feed customers.

"That plaintiff relied on defendant's material representations * * * and in reliance on these representations, plaintiff represented to plaintiff's customers that defendant would perform these said representations * * * and due to plaintiff's statements and representations to plaintiff's customers, plaintiff caused many of plaintiff's better customers to change from the said customer's feed supplier to defendant."

That the defendant did not at any time comply with or perform its promises and thereby caused serious damage to the plaintiff and to plaintiff's customers, all to the damage of plaintiff in the sum of $95,600.

Answer of defendant was filed January 10, 1972, in which defendant alleged that the complaint fails to state a claim against it upon which relief can be granted to plaintiff.

Defendant admitted that the plaintiff was engaged in the business of milling and distributing feed for hogs and other animals; neither admitted nor denied that plaintiff had built a substantial good will throughout Washington Coun-

ty and northwest Arkansas; but denied all other allegations in the complaint.

On May 1, 1972, defendant, with leave of the court, amended its answer to include a counterclaim against plaintiff in the sum of $2,391.00.

On August 29, 1972, the defendant filed its motion for summary judgment in its favor and against the relief sought by plaintiff in its complaint or any part thereof "on the ground that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law."

Defendant further prayed that the court enter a summary judgment in its favor for the relief demanded by it in the counterclaim on the ground that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law.

On October 11, 1972, plaintiff filed its response to the motion for summary judgment in which it denied all of the allegations contained in defendant's motion for summary judgment, and alleged that "there are material issues of fact to be decided by the trier of facts."

"That in the event summary judgment is granted on the defendant's counterclaim, that such said judgment be set off against any sums which the plaintiff may recover against the defendant."

### The Applicable Law

The law governing the consideration and determination of motions for summary judgment is well settled by a great many decisions, and is summarized beginning at page 2853, ¶ 56.23, 6 Moore's Federal Practice, 2d Ed.:

"The party moving for summary judgment has the burden of establishing by a record that is adequate for decision of the legal question presented that there is no triable issue of material fact; and he has this burden even as to issues upon which the opposing party would have the trial burden. And the moving party's papers are carefully scrutinized, while the op-

posing party's papers, if any, are treated with considerable indulgence. If the moving party fails to shoulder his burden his motion should be denied, even though the opposing party has presented no evidentiary materials in opposition, and has not presented any 56(f) affidavit. But the latter course of action on the part of the opposing party is extremely risky and is not recommended for the following reasons. Although the trial court in the exercise of a sound discretion may decline to grant summary judgment, even though the movant has technically discharged his burden, the trial court will normally not look with indulgence upon a party who has presented neither evidentiary materials in opposition or any reason for his failure so to do. Further, it is certainly well settled that the opposing party is not entitled to hold back his evidence until trial, and is not entitled to a trial on the possibility that an issue of material fact might arise if the case were to go to trial on the merits. Nor as a general rule is an appellant entitled to overturn a summary judgment by raising an issue of fact not plainly disclosed in the trial court. And where the moving party has discharged his burden and on the record is entitled to summary judgment, the trial court's refusal to grant the opposing party a continuance or other related relief will not be interfered with by the appellate court, except where the trial court has abused its discretion."

Beginning at page 2057, ¶ 56.04, the learned author states:

"The summary judgment procedure prescribed in Rule 56 is a procedural device for promptly disposing of actions in which there is no genuine issue as to any material fact. On many cases there is no genuine issue of fact, although such an issue is raised by the formal pleadings. The purpose of Rule 56 is to eliminate a trial in such cases, since a trial is unnecessary and results in delay and expense which may operate to defeat in whole or in part the recovery of a just claim or the expeditious termination of an action because of a meritorious defense that is factually indisputable.

"As Judge, later Justice Cardozo stated: 'The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial.'

"To attain this end, the rule permits a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, answers to interrogatories, and admissions on file show that there are no genuine issues of material fact to be tried."

In Mintz v. Mathers Funds, Inc. (7 Cir. 1972), 463 F.2d 495, the court at page 498 said:

"The primary purpose of a motion for summary judgment is to avoid a useless trial, and summary judgment is a procedural device for promptly disposing of actions in which there is no genuine issue of any material fact even though such issue might have been raised by formal pleadings. The very purpose of Rule 56 is to eliminate a trial in such cases where a trial is unnecessary and results in delay and expense."

The court further said:

"Appellate courts should not look the other way to ignore the existence of genuine issues of material facts, but neither should they strain to find the existence of such genuine issues where none exist. Kirk v. Home Indemnity Company, 431 F.2d 554 (7 Cir. 1970)."

The defendant to sustain its motion relies upon (a) all pleadings, and (b) the depositions of Larry E. Baker, President and General Manager of plaintiff corporation, and J. A. Cartwright, District Sales Representative of defendant.

In its brief the defendant states:

"While the defendant denies making or breaching any legal undertakings, these depositions revealing the facts giving rise to this litigation establish that the plaintiff's position is at best that of an incidental beneficiary to a contract to which the plaintiff was not a party."

The plaintiff in its brief in opposition to the defendant's motion also relies upon the depositions to sustain its response to the motion and in its brief states:

"This suit by plaintiff is based on an agreement, a contract, or a 'legal undertaking * * *' between plaintiff and defendant. The plaintiff cannot possibly be an incidental beneficiary of a contract between plaintiff and defendant."

The applicable law of Arkansas controls and determines the rights of the parties hereto and will be discussed before considering and determining the question of whether "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In 4 Corbin on Contracts, § 779J, p. 59, the learned author states:

"The right of a third party beneficiary is properly described as a 'contract right' whether he is a creditor or a donee. The right is created by a 'contract' between promisor and promisee, the validity and operation of which are determined by the law of 'contracts.'"

In Lesser-Goldman Cotton Co. v. Fletcher (1922), 153 Ark. 17, 239 S.W. 742, the court at page 34 of 153 Ark., 239 S.W. at 748, in quoting from Thomas Mfg. Co. v. Prather, 65 Ark. 27–29, 44 S.W. 218 said:

"'Where a promise is made to one upon a sufficient consideration for the benefit of another, the beneficiary may sue the promisor for a breach of his promise.' As prerequisites of the application of the doctrine, we further

said, quoting from the N.Y. Court of Appeals in Vrooman v. Turner, 69 N. Y. 280, [25 Am.Rep. 195]: 'There must be—first, an intent by the promisee to secure some benefit to the third party and, second, some privity between the two—the promisee and the party to be benefited—and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise.' See, also, Little Rock Ry. & Elect. Co. v. Dowell, 101 Ark. 223–226 [142 S.W. 165]; Dickinson v. McCoppin, 121 Ark. 414–[418] [181 S.W. 151]; Ga. State Sav. Assn. v. Dearing, 128 Ark. 149–154 [193 S.W. 512]; Schmidt v. Griffith, 144 Ark. 8, [221 S.W. 476]."

In Carolus v. Arkansas Light & Power Co. (1924), 164 Ark. 507, 262 S.W. 330, the court, in discussing Thomas Mfg. Co. v. Prather, supra, on pages 512–513 of 164 Ark., on page 331 of 262 S.W. said:

"'This court long ago ruled, in line with the doctrine which generally obtains in this country, that where a promise is made to one upon a sufficient consideration, for the benefit of another, the beneficiary may sue the promisor for a breach of his promise. This doctrine operates as an exception to the elementary rule of law that a stranger to a simple contract, from whom no consideration moves, cannot sue upon it. Therefore it should be applied cautiously, and restricted to cases coming clearly within its compass. "There must be, first, an intent by the promisee to secure some benefit to the third party; and second, some privity between the two—the promisee and the party to be benefited—and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him, personally."' The doctrine of this case has been since approved in Dickinson v. McCoppin, 121 Ark. 414, [181 S.W. 151], and Schmidt v. Griffith, 144 Ark. 8,

[221 S.W. 476]; see also Spear Mining Co. v. Shinn, 93 Ark. 346, [124 S. W. 1048]. In Dickinson v. McCoppin, supra, we quoted the following from R.C.L.: 'Under the rule that a beneficiary may enforce a contract, the contract must have been intended for the benefit of a third person. It is not sufficient that the performance of the covenant may benefit a third person. It must have been entered into for his benefit, or at least such benefit must be the direct result of performance, and so within the contemplation of the parties. The fact that one not a party or privy to a contract is incidentally benefited under it is no reason for declaring that the contract was made and intended for his benefit.' "

In Coley v. English (1962), 235 Ark. 215, 357 S.W.2d 529, the court at page 216 of 235 Ark., also at page 530 of 357 S.W., in discussing third party beneficiary contracts, stated:

"In Restatement, Contracts, § 133 (1932) we find third party beneficiary contracts divided into three classes: (1) He is a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance is to make a gift to, or confer a right of action upon, the beneficiary; (2) He is a creditor beneficiary if no purpose to make the beneficiary a donee appears from the terms of the promise in view of all the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary; (3) He is an incidental beneficiary if the facts of neither (1) nor (2) exist."

In 17 Am.Jur.2d, § 307, at page 732 it is stated:

"The principle that one not a party or privy to a contract but who is the beneficiary thereof is entitled to maintain an action for its breach is not so far extended as to give to a third person who is only indirectly and incidentally benefited by the contract the right to sue upon it. A mere incidental, collateral, or consequential benefit which may accrue to a third person by reason of the performance of a contract, or the mere fact that he has been injured by the breach thereof, is not sufficient to enable him to maintain an action on the contract. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefited does not give him a right to sue for its breach. An incidental beneficiary has no enforceable rights or interest under, and hence he cannot recover on, the contract. He has no rights under the contract against either the promisor or the promisee.

"Whether a third-party beneficiary is merely an incidental beneficiary is a question of construction."

In Restatement of Contracts (1932 Ed.), § 147, it is stated:

"An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee."

In Walker v. Wittenberg (1967), 242 Ark. 97, 412 S.W.2d 621, the court at page 106 of 242 Ark., also at page 630 of 412 S.W. said:

"The presumption is that parties contract only for themselves, and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties."

Rule 56, Fed.R.Civ.P., provides:

"(a) A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."

"(b) A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

Subsection (c), inter alia, provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Subsection (e) deals with form of affidavits, and provides that the court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. " * * * an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The only affidavit that was submitted by either party is one attached to the response of plaintiff to the motion for summary judgment, in which the affiant, Larry E. Baker, states:

"I, Larry Baker, state that I have read the above and foregoing and that the facts, statements therein contained, are true and correct to the best of my knowledge and belief."

It will be noted that Mr. Baker does not state any specific facts that tend to show or establish any genuine fact issue, and thus relies upon the depositions, the interrogatories and answers thereto.

### The Facts

In March 1970 Armour & Co. initiated a sow-lease program in portions of Washington County and northwest Arkansas, under the terms of which various individual growers leased sows from said company. Armour would deliver the sow or sows to the grower-lessee who was obligated to care for and feed the sows and pigs until the pigs were four months old when Armour would buy the pigs from the grower-lessee with check payable to the grower and the feed merchant that sold the feed to the grower of the pigs.

Prior to the inception of the controversy between plaintiff and defendant, the plaintiff was selling at retail hog feed manufactured by Pay Way Feed Mills, Inc. During this time, Mr. James A. Cartwright, Sales Representative of defendant, contacted the plaintiff for the purpose of obtaining the hog feed business of plaintiff. This contact by Cartwright continued at various times until September 1970 when Mr. Baker, the President and Manager of plaintiff, was invited at the request of Cartwright to a meeting conducted by defendant at the Lake of the Ozarks in Missouri. The meeting was more or less promotional and was attended by a great many dealers in feed. At that time the chief business of defendant was selling poultry feed in northwest Arkansas, but it was anxious to obtain some connection that would enable it to obtain a portion of the hog feed business. The defendant's officers had a general discussion with Mr. Baker concerning the Armour sow-lease program and a proposal of Baker that a feed warehouse to serve northwest Arkansas be established, but no decisions were made. The result of the meeting and various conversations with the officials of defendant at that meeting was summarized by Mr. Baker in his deposition at page 33 as follows:

"I couldn't swear to any basic testimony nor was there any particular agreement signed that week end or anything else."

Following the Lake of the Ozarks event, Mr. Cartwright, Sales Representative of defendant, asked Mr. Baker to assemble the area growers in order that he might explain the advantages of the defendant's feed and its financing arrangement. Mr. Baker contacted some of the growers who met with Cartwright and a Pay Way representative on Octo-

ber 8, 1970, at the Down Town Motor Lodge in Fayetteville, Arkansas. At that meeting Cartwright explained the financing plan of the defendant and his role as an adviser and trouble shooter. The Pay Way representative had been invited by Mr. Baker and explained certain anticipated liberalizations in his company's program. Mr. Baker in his deposition at page 38, in testifying concerning what occurred at the meeting on October 8, said:

"I felt like, I was convinced that I could not force the customers in any way so I called them and let them hear both sides of the story."

The Pay Way plan and the plan of the defendant to finance the various growers who obtained the sows were very similar. The amount that was advanced by Pay Way was somewhat smaller than the amount which the defendant agreed to furnish the growers to be used in caring for the sows and the pigs.

Following the meeting of October 8, 1970, Cartwright called on several growers individually and secured credit applications from them in order to expedite the business in the event a grower agreed to follow the defendant's program, and buy his hog feed from a dealer of the defendant. Baker merely accompanied Cartwright on these visits but had nothing whatsoever to do with their negotiations. The growers and defendant were the parties to any bargaining. From the meeting and various conversations it appeared to Mr. Baker that his customers were going to make a change.

The plaintiff became a dealer of the defendant and the growers began buying hog feed manufactured by the defendant. When a grower desired to purchase the feed, he obtained from the defendant a "Delivery Receipt and Note," executed in quadruplicate, showing amount and kind of feed, the price, the date and number of the contract between the grower and the defendant, and due on date set forth in the contract with interest at 8 percent until paid. (The contract referred to in the note is not in the record before the court.)

Baker was very skeptical about the change because he wanted something in writing on the warehouse matter, and on the 28th of October he asked Mr. Cartwright for something definite about the establishment of a warehouse.

He got no definite information or action by Cartwright, who showed him the Salesman's Manual, which contained "the chain of command." Cartwright had no authority except to execute orders.

After that conference with Cartwright, the plaintiff began buying its feeds from the defendant and did sell the feed to the producers whose contracts to purchase the defendant's feed had been agreed to by the growers and defendant.

The only agreement that the plaintiff had with the defendant was introduced as an exhibit to the deposition of Mr. Baker. It merely granted the plaintiff a non-exclusive license to use the Wayne-mix agreement for the production of specific feed.

Before many months some of the growers became very much dissatisfied with the terms of the contracts with defendant. Some of the growers were in default on their contracts with defendant. Others were complaining about the service. An official of the defendant requested Mr. Baker to call a meeting of the buyers that were operating under the contract with the defendant. There was some misunderstanding or probability about which officer would speak to the feeders. Baker was disgusted at being unable to obtain a warehouse to store the feed purchased for sale and would have nothing to do with the trouble between the defendant and the growers, but did agree to call the meeting and stated that it was up to the feeders to straighten out their own troubles. "So far as I am concerned, I am not going to do business again. It is all over." The growers and defendant did not reach an accord.

The claim of plaintiff for damages is not supported by any affidavit, document or otherwise. Plaintiff claims that it has been damaged in the sum of $95,600 for breach of contract and loss of good will and should receive said sum together with $50,000 punitive damages. Plaintiff had no ownership in the animals. They belonged to the various feeders but plaintiff specifically contends that the loss to it was occasioned by the breach of the financing contract between the defendant and the various growers. The defendant has not reimbursed the feeders for any loss that they have sustained in the liquidation or by having to buy feed elsewhere. The plaintiff further complains because it surrendered its relationship with Pay Way Feed Mills, Inc. In summary, the entire claim of plaintiff is based upon (1) that the defendant breached a contract with it to establish a warehouse in northwest Arkansas which would have guaranteed the availability to plaintiff of ample feed at all times; (2) that defendant failed to provide feed financing to the growers; and (3) failed to provide sufficient service to the growers.

The deposition of Mr. Baker, President and General Manager of plaintiff, establishes beyond question that there was no contract of any kind entered into between plaintiff and the defendant. There were many conversations between Mr. Baker and Mr. Cartwright, but no contracts of any kind were entered into or introduced except relative to the license hereinbefore referred to, and since there was no contract and nothing to indicate that it was the intention of the growers and the defendant to contract for the benefit of plaintiff, there can be no recovery by plaintiff on its claims. The contracts between the growers and the defendant were entered into for their own benefit. The fact that the plaintiff, not a party to the contract, might have incidentally benefited by the performance of all those contracts is no reason for holding that the contracts between the growers and the defendant were made and intended for the benefit of the plaintiff. The benefits, if any, that it would have derived from the contracts between the growers and defendant were merely incidental, and therefore the plaintiff has no valid claim against the defendant.

The defendant has established beyond controversy by the depositions that "there is no genuine issue as to any material fact" and that it is entitled to judgment as a matter of law. This conclusion makes it unnecessary to consider the amount of damages which the plaintiff has alleged it suffered, but even if that question had been reached and considered, there is no proof to establish with any degree of certainty any part of such claim. As to the counterclaim of defendant in the sum of $2,391.00, Mr. Baker in his deposition at page 105 admits that the plaintiff owes defendant said amount.

Therefore, judgment is being entered today sustaining the motion of defendant for summary judgment and dismissing the complaint and the amendment thereto of plaintiff, and for the recovery by defendant of the sum of $2,391.00 on its counterclaim, together with interest at 6 percent per annum from this date, with costs against plaintiff.